**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

| | |
|---|---|
| SOLINA MAO, JAMES BARCLAY, SAMANTHA HARVEY, ANAHI ESTRADA, MARY ROLON, MELISSA CROXFORD, and KAYCI STADDON, *individually and on behalf of all similarly situated individuals*,<br><br>    Plaintiffs,<br><br>v.<br><br>GLOBAL TRUST MANAGEMENT, LLC, JEFFREY PUSATERI, PARAMOUNT ASSETS PROTECTION SERVICES, LLC, D/B/A PARAMOUNT PROCESSING GROUP, LLC, REEL TIME CAPITAL, LLC, DIRECT RECOVERY SERVICES, LLC, and JOHN DOES 1-15,<br><br>    Defendants. | Civil Action No. 4:21-cv-65 |

**CLASS ACTION COMPLAINT**

The Plaintiffs, Solina Mao, James Barclay, Samantha Harvey, Anahi Estrada, Mary Rolon, Melissa Croxford, and Kayci Staddon (collectively "Plaintiffs"), individually and on behalf of all similarly situated individuals, by counsel, file this Class Action Complaint against Defendants Global Trust Management, LLC ("Global Trust"), Jeffrey Pusateri ("Pusateri"), Paramount Assets Protection Services, LLC d/b/a Paramount Processing Group, LLC ("Paramount"), Reel Time Capital, LLC ("Reel Time"), Direct Recovery Services, LLC ("Direct Recovery"), and John Does 1-15, (collectively "Defendants"). In support of their Complaint, Plaintiffs allege as follows:

**PRELIMINARY STATEMENT**

1.    Plaintiffs and the consumers in the putative classes were victimized by "payday" loans, which are short-term credit products sold with extremely high interest rates and targeted at

1

low-income individuals with high credit risks, made by American Web Loans ("AWL"). The AWL's payday loans were sold over the internet and were described as "fast cash" that provided funds immediately. Although this form of consumer credit is illegal under most states' usury laws, highly organized schemes, including the one operated by AWL, to evade these legal restrictions have proliferated.

2.     One of the most common forms of these illegal schemes has been the so-called "tribal lending" schemes. In a tribal-lending scheme, otherwise known as "rent-a-tribe," a payday lender recruits a Native American tribe to establish a tribal business entity to function as the nominal, originating lender in order to create a tribal shield for the business. The revenues of the business flow principally to the nontribal actors that market, underwrite, and collect the loans, and the real lender is hidden behind the veneer of tribal sovereignty in an effort to insulate the usurious schemes from state and federal regulatory authorities. These schemes principally operate over the internet.

3.     AWL is one of these lending schemes. It was purportedly operated by a Native American tribe, but for all practical purposes it was actually controlled by and for the profit of non-defendant Mark Curry and entities controlled by him, including the non-defendant entities MacFarlane Group and Sol Partners—none of whom are part of a Native American tribe. Plaintiffs and the putative class members are AWL borrowers.

4.     AWL loaned money at usurious rates across the United States, including in Arizona, California, Florida, Indiana, Iowa, and Virginia. As it was virtually impossible to keep up with the triple-digit interest on these predatory loans, thousands of AWL borrowers defaulted on their loans. AWL placed these defaulted accounts with third-party collection companies, including the Defendants.

2

5.      While the Plaintiffs' claims were resolved against AWL, Curry, MacFarlane Group, and Sol Partners in *Solomon v. American Web Loan Inc.,* No. 4:17-cv-0145-HCM-RJK (E.D. Va.), the lending scheme did not end there.

6.      The Defendants here are the remaining debt-collection entities that participated in the lending scheme by purchasing defaulted loans from the scheme. After purchasing the defaulted debt, the Defendants violated state and federal law by using abusive and illegal collection tactics to try to coerce the Plaintiffs and putative class members into paying these illegal and usurious loans.

7.      Defendant Global Trust has purchased close to $100 million in defaulted AWL debt for pennies on the dollar. *See* Hr'g Tr. at 4:15–17, *Solomon v. American Web Loan Inc.,* No. No. 4:17-cv-0145-HCM-RJK (E.D. Va. Apr. 7, 2021), ECF No. 487 (noting AWL loans appear to be have been sold to debt buyers for $0.10 on the dollar).  It is  the only remaining debt purchaser that is actively trying to collect the usurious and illegal AWL debts. As part of its collection efforts, Defendant Global Trust falsely tells consumers that it is a "servicer" for Defendant Reel Time.

8.      Upon information and belief, Defendant Global Trust leases its debts to debt collectors such as Defendants Direct Recovery and Paramount.

9.      In turn, Defendant Paramount and its owner Defendant Pusateri use strong-arm tactics such as calling family members and employers, lying about pending court action, and threatening "forceful garnishment" and "orders of location" in an effort to convince low-income consumers to pay their last dollar to them rather than other necessities for their families.

10.      Accordingly, Plaintiffs bring this action for actual and statutory damages, punitive damages, costs, and attorney's fees for Defendants' violations of the Racketeer Influenced and

Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p; and state consumer protection and usury statutes.

## JURISDICTION AND VENUE

11.     The Court has original jurisdiction over Plaintiffs' RICO (*see* 18 U.S.C. § 1964) and FDCPA (*see* 18 U.S.C. §1692) claims under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims under 28 U.S.CC. § 1367.

12.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because Plaintiff Mao resides in this District and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District and 18 U.S.C. § 1965 because Defendants have transacted their affairs in Virginia, including, upon information and belief, the collection of millions of dollars in this District and the transmission of countless communications in an attempt to collect debts in Virginia.

## PARTIES

13.     Plaintiff Solina Mao is a natural person, resident of Virginia and "consumer" as defined and governed by the FDCPA. 15 U.S.C. § 1692a(3). He is also a person under RICO. 18 U.S.C. § 1961(3).

14.     Plaintiff James Barclay is a natural person, resident of Iowa and "consumer" as defined and governed by the FDCPA. 15 U.S.C. § 1692a(3). He is also a person under RICO. 18 U.S.C. § 1961(3).

15.     Plaintiff Samantha Harvey is a natural person, resident of California and "consumer" as defined and governed by the FDCPA. 15 U.S.C. § 1692a(3). She is also a person under RICO. 18 U.S.C. § 1961(3).

16.     Plaintiff Anahi Estrada is a natural person, resident of Arizona and "consumer" as defined and governed by the FDCPA. 15 U.S.C. § 1692a(3). She is also a person under RICO. 18 U.S.C. § 1961(3).

17.     Plaintiff Mary Rolon is a natural person, resident of Florida and "consumer" as defined and governed by the FDCPA. 15 U.S.C. § 1692a(3). She is also a person under RICO. 18 U.S.C. § 1961(3).

18.     Plaintiff Melissa Croxford is a natural person, resident of Indiana and "consumer" as defined and governed by the FDCPA. 15 U.S.C. § 1692a(3). She is also a person under RICO. 18 U.S.C. § 1961(3).

19.     Plaintiff Staddon is a natural person, resident of Arizona and "consumer" as defined and governed by the FDCPA. 15 U.S.C. § 1692a(3). She is also a person under RICO. 18 U.S.C. § 1961(3).

20.     Defendant Global Trust is a foreign entity with its principal place of business in Florida. Global Trust is a "debt collector" as defined by the FDCPA. 15 U.S.C. § 1692a(6).

21.     Defendant Pusateri is a resident of North Carolina and the sole owner of Paramount. He resides at 7800 Montane Run Court, Waxhaw, NC 28173. He is a "debt collector" as defined by the FDCPA. 15 U.S.C. § 1692a(6).

22.     Defendant Paramount is a foreign entity incorporated in Delaware, that transacts business throughout the United States. Paramount is a "debt collector" as defined by the FDCPA. 15 U.S.C. § 1692a(6).

23.     Defendant Reel Time is a foreign entity with its principal place of business in Florida. Reel Time is a "debt collector" as defined by the FDCPA. 15 U.S.C. § 1692a(6).

24.     Defendant Direct Recovery is a foreign entity with its principal place of business in Minnesota. Direct Recovery is a "debt collector" as defined by the FDCPA. 15 U.S.C. § 1692a(6).

25.     Defendants John Doe Nos. 1-15 are unidentified parties who participated in the enterprise with the Defendants, including but not limited to entities who aided, abetted, and facilitated the conspiracy to collect the unlawful amounts from consumers.

## FACTS

### *Plaintiffs' Loans Are the Product of an Illegal Lending Enterprise*

26.     Plaintiffs' AWL loans were made by an illegal lending enterprise that was formed to avoid state usury and licensing laws, including those states in which Plaintiffs live: Virginia, Arizona, California, Florida, Indiana, Iowa.

27.     Each of the Plaintiffs applied for their AWL loan through its website on their home computer or other personal device in the state where they reside. Each Plaintiff applied for their loan for a personal or household purpose.

28.     The AWL website purported to be operated by a company owned by an Oklahoma-based Native American tribe, the Otoe-Missouria. However, this website was established and operated by Mark Curry who, using various companies that he owned or controlled, was engaged in a "rent-a-tribe" lending scheme.

29.     Under this scheme, while AWL would serve as the nominal lender, Curry-owned or -affiliated entities conducted all of the lending enterprise's substantive operations including, among other things, marketing and lead generation, application processing, underwriting, technical support, electronic funds transfers, loan servicing, and collections.   Moreover, Curry, his companies, and investors that Curry recruited provided funding for the loans.   In exchange for enacting tribal lending laws and creating the business entities necessary to enable and carry out

this scheme, Curry's payday lending operation would provide the cooperating tribe with a small percentage of the revenues generated by AWL loans.

30.     The "rent-a-tribe" model was designed to avoid banking regulatory issues and leverage AWL's existing sourcing, underwriting, and servicing platforms from a previous rent-a-bank model that was shut down by the Federal Deposit Insurance Corporation.

31.     A central feature of AWL's business model is the choice-of-law and arbitration provisions used in the scheme's lending agreements. The non-tribal participants, such as the Defendants, in the scheme will claim that they have no liability for their violations of state and federal laws because only tribal law applies to the loans. These claims have been uniformly denied by courts from a variety of jurisdictions—at the District and Circuit level—across the country, including by this Court with respect to loan agreements similar to those at issue here.[1]

32.     Each of the Plaintiffs were approved for their AWL loan almost instantaneously, based on the automated underwriting mechanisms utilized by Curry and his companies. Under the terms of these loans, AWL charged triple digit interest rates, with some loans reaching as high 700% APR.

33.     The loans offered to each Plaintiff were illegal.

---

[1] *See Gibbs v. Stinson*, No. 3:18-cv-676, 2019 WL 4752792, at *14–18 (E.D. Va. Sept. 30, 2019); *see also Gingras v. Think Fin.*, 922 F.3d. 112 (2d Cir. 2019); *Brice v. 7HBF No. 2, Ltd.*, No. 19-CV-01481-WHO, 2019 WL 5684529 (N.D. Cal. Nov. 1, 2019); *Brice v. Plain Green*, 372 F. Supp. 3d 955 (N.D. Cal. 2019). *Cf. Consumer Fin. Prot. Bureau v. CashCall, Inc.*, 2016 WL 4820635, at *7 (C.D. Cal. Aug. 31, 2016); *W. Sky Fin., LLC v. State ex rel. Olens*, 300 Ga. 340, 348 (2016), *reconsideration denied* (Dec. 8, 2016); *Inetianbor v. CashCall, Inc.*, No. 13-60066-CIV, 2015 WL 11438192, at *3 (S.D. Fla. Dec. 8, 2015); *Cooper v. W. Sky Fin., LLC*, No. 13 CVS 16487, 2015 WL 5091229, at *10 (N.C. Super. Aug. 27, 2015); *MacDonald v. CashCall, Inc.*, No. CV 16-2781, 2017 WL 1536427, at *10 (D.N.J. Apr. 28, 2017), *aff'd*, 883 F.3d 220 (3d Cir. 2018); *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 336 (4th Cir. 2017); *Hayes v. Delbert Servs., Inc.*, 811 F.3d 666 (4th Cir. 2016); *Rideout v. CashCall, Inc.*, No.  2018 WL 1220565, at *8 (D. Nev. Mar. 8, 2018).

34.     In addition to general usury laws, most states have adopted small-loan statutes that allow specifically defined, small-amount loans at higher rates, conditioned on the lender obtaining a license and complying with the restrictions contained in the statute.

35.     Almost all other state jurisdictions treat as illegal unlicensed small loans like those involved here. *See, e.g.,* Alabama (Ala. Code § 5-18-4); Alaska (Alaska Stat. § 06.20.310); Arizona (Ariz. Rev. Stat. § 6-613(B)); Arkansas (Ark. Code §§ 4-57-104, 105); California (Cal. Fin. Code §§ 22303, 22750); Colorado (Colo. Rev. Stat. § 5-2-201); Connecticut (Conn. Gen. Stat. § 36a-573; District of Columbia (D.C. Code §§ 26-905, 28-3303); Florida (Fla. Stat. § 516.02); Georgia (Ga. Code § 7-3-50); Hawaii (Haw. Rev. Stat. § 478-4); Idaho (Idaho Code § 28-46-402); Illinois (815 Ill. Comp. Stat. 122/4-10); Indiana (Ind. Code § 24-4.5-5-202); Iowa (Iowa Code § 536.13); Kansas (Kan. Stat. § 16a-5-201); Kentucky (Ky. Rev. Stat. § 286.4-991); Louisiana (La. Stat. § 9:3552); Maine (Me. Rev. Stat. tit. 9-A, § 2-201); Maryland (Md. Code, Com. Law § 12-314); Massachusetts (Mass. Gen. Laws ch. 140, § 119); Michigan (Mich. Comp. Laws §§ 438.32, 445.1854); Minnesota (Minn. Stat. §§ 56.19, 334.02); Mississippi (Miss. Code. § 75-67-119); Missouri (Mo. Stat. § 408.020); Montana (Mont. Code § 31-1-108); Nebraska (Neb. Rev. Stat. § 45-1038); New Hampshire (N.H. Rev. Stat. § 399-A:23); New Jersey (N.J. Stat. §§ 31:1-1, 17:11C-32, 33); New Mexico (N.M. Stat. § 58-15-3); New York (N.Y. Gen. Oblig. Law §§ 5-501, 511, 513); North Carolina (N.C. Gen. Stat. §§ 24-2, 53-166); North Dakota (N.D. Cent. Code § 13-04.1-09.2); Ohio (Ohio Rev. Code § 1321.02); Oklahoma (14A Okla. Stat. §§ 3-201); Oregon (Or. Rev. Stat. § 725.045); Pennsylvania (41 P.S. §§ 501-502); Rhode Island (6 R.I. Gen. Laws § 6-26-4); South Carolina (S.C. Code § 34-29-140); South Dakota (S.D. Cod. Laws § 54-4-44); Tennessee (Tenn. Code §§ 47-14-110, 117); Texas (Tx. Fin. §§ 302.001-004); Vermont (Vt. Stat. tit. 9, § 50); Virginia (Va. Code § 6.2-303); Washington (Wash. Rev. Code § 19.52.020); West

Virginia (W. Va. Code §§ 46A-5-101); Wisconsin (Wis. Stat. § 138.14); and Wyoming (Wyo. Stat. § 40-14-521).

36.     Usury and licensing laws are vital public policy tools that state legislatures use to protect consumers in their states from the predatory conduct of high-APR small-loan lenders. The short-term, high-interest loans that usury laws regulate are targeted at the most economically vulnerable.[2] The CFPB has recognized that these products create cycles of high-cost borrowing over extended periods of time, where consumers must take out additional payday loans to cover the costs of the prior loans at risk of punitive fees and are so caught in a "debt trap."[3] States use many policy tools to limit the proliferation of such loans. The most common tools, and the ones pertinent to this lawsuit, include limits on the maximum interest rates that can be charged and licensing requirements on charging higher rates of interest.

37.     The usurious lenders' use of the rent-a-tribe model to avoid state lending laws has been widely publicized. *See, e.g.,* H.R., Committee on Financial Services, Dem. Staff Report, "Skirting the Law: Five Tactics Payday Lenders Use to Evade State Consumer Protection Law," June 16, 2016, at 15 ("Renting Sovereign Immunity"); Carter Dougherty, "Payday Lenders and Indians Evading Laws Draw Scrutiny," Bloomberg, June 5, 2012; Jeff Guo, "Many States Have Cracked Down on Payday Loans. Here's How Lenders Still Get Away with It," Washington Post, February 9, 2015.

---

[2] *See* Mikella Hurley & Julius Adebayo, *Credit Scoring in the Era of Big Data*, 18 Yale J. L. & Tech. 148, 174 (2016) (on the use of "alternative" credit-scores and lead generation for payday loan vendors targeted at poor and minority communities).

[3] *See* Consumer Financial Protection Bureau, White Paper: Payday Loans and Deposit Advance Products, at 43-44 (Apr. 24, 2013).

38.     AWL has faced regulatory enforcement action in multiple states for its usurious lending practices. It is generally known that:

- Several states, including Connecticut, New York, Washington, and Arkansas, have taken various regulatory actions against AWL and Curry.

- In October 2014, the Second Circuit of Appeals, affirmed a district court's denial of a request by various Native American tribes—including specifically the tribe used by Curry in this scheme—to enjoin a state lending regulator's cease and desist order directed at various tribal lending enterprises, ***including AWL***. *See Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs*., 769 F.3d 105, 114 (2d Cir. 2014) (noting that "a tribe has no legitimate interest in selling an opportunity to evade state law').

- There were highly publicized governmental enforcement actions against a similar "rent-a-tribe" enterprise that the same tribe, the Otoe-Missouria, was engaged in with a different, nontribal, payday lender. *See Commonwealth of Pennsylvania v. Think Fin., Inc.,* No. 14-CV-7139, 2016 WL 183289 (E.D. Pa. Jan. 14, 2016); *Consumer Fin. Prot. Bureau v. Think Fin., LLC*, No. CV-17-127-GF-BMM, 2018 WL 3707911, (D. Mont. Aug. 3, 2018).

- There has been a RICO class action against AWL and Curry pending since 2017, which has resulted in the cancellation of all AWL outstanding loans and a cash payment of $85 million. *See Solomon v. Am. Web Loan*, No. 4:17CV145, 2019 WL 1320790 (E.D. Va.).

39.     Despite these regulatory enforcement efforts and private lawsuits contesting the illegality of the loans, Defendants nonetheless continue to attempt to collect these debts from consumers.

40.     Defendants and others established an association-in-fact enterprise to evade state usury laws and collect unlawful interest on the AWL debts.

41.     Specifically, after all of this enforcement action, Defendant Global Trust purchased tens of millions of dollars in AWL debt for pennies on the dollar.

42.     Defendant Global Trust then enlisted the remaining Defendants to participate in efforts to collect the illegal debt from consumers, including the Plaintiffs.

43.     At all times relevant to the Complaint, Defendants understood that AWL and other members of the association-in-fact enterprise were making and collecting on usurious loans in violation of state usury laws.

44.     Defendants knew of and agreed to the overall objective of the enterprise and conspiracy to collect unlawful debt. Defendants participated in the enterprise by attempting to collect, and in fact collecting, illegal debts from Plaintiffs.

### *Defendants Attempt to Collect Illegal Debts from Plaintiffs*

45.     Each of the Plaintiffs defaulted on their AWL debt, and their loans were subsequently sold to Defendant Global Trust for pennies on the dollar.

46.     Despite the fact that Plaintiff Mao's loan was sold to Global Trust, Defendant Direct Recovery has contacted him to collect the AWL debt and falsely stated the owner of the debt was Defendant Reel Time.

47.     Similarly, Plaintiffs Harvey, Rolon, and Croxford were contacted by Global Trust falsely indicating that the AWL debt was owned by Reel Time.

48.     After Plaintiffs refused to pay Global Trust for their AWL debts, Global Trust enlisted Defendants Pusateri and Paramount to pressure Plaintiffs into paying the debts in furtherance of the enterprise by threatening non-existent court action, calling family members and employers, and making false statements regarding the debt and *Solomon* settlement.

49.     Specifically, since December 2020, the Defendants Paramount under Pusateri's direction made the following false and abusive statements:

- Plaintiff Barclay was told he would be subject to "forced collection" and "forceful garnishment" of wages if he did not begin paying his AWL loan debt. Defendants falsely represented that they operated under tribal law rather than federal law. Defendants threatened Plaintiff Barclay stating that there were two pending complaints in this office against him.

- Plaintiff Estrada was told in several phone calls that her wages would be garnished if she did not pay the AWL debt. Defendants also called her at work and left messages with her mother and sister. Plaintiff Estrada was also told she would be breaking the law if she did not repay the debt.

- Plaintiff Croxford was told two civil complaints would be filed against her if she did not pay. Defendants also called various family members including her parents, aunt, and brother indicating there were two civil actions against her. She was advised that Defendants would "see her in court tomorrow" if she did not pay and her wages would be garnished.

- Plaintiff Staddon was threatened with service of process over the telephone and was told that there were two cases against her: one for electronic check fraud and one for committing fraud against a financial institution.

50.    Further, within the one year prior to filing this lawsuit, all of the Defendants have attempted to collect the illegal debts from Plaintiffs far in excess of what Plaintiffs would owe, even if these loans were lawful. For example:

- Plaintiff Mao was told he owed over $2,500, despite borrowing less than that amount and having made payments on her AWL loan.

- Plaintiff Barclay was told he owed nearly $3,000, despite borrowing significantly less than that amount and having paid back most of what he borrowed on his AWL loan.

- Plaintiff Harvey was told she owed $2,842.10, despite the fact that she only borrowed $1,800 and paid back most, if not all, of what she borrowed.

- Plaintiff Estrada was sent an email threatening legal action and attorney's fees if she didn't pay $4,206, which was significantly more than the original AWL debt and did not account for the amounts she had paid back.

- Plaintiff Rolon was told by Defendants she owed $2,618.86, despite borrowing significantly less than that amount and having paid back nearly all of what she borrowed.

- Plaintiff Croxford was told by Defendants she owed $4,000 despite borrowing significantly less than that amount and having made numerous payments to AWL.

- Plaintiff Staddon originally borrowed $700, but was advised by Defendants that she owed over $5,000 despite the fact that she had paid back what she borrowed to AWL.

51.    Plaintiffs Barclay, Croxford, and Estrada each made payments to Defendants on the illegal debts.

52.    The representations made by Defendants in their communications with Plaintiffs and all consumers with AWL loans were false and misleading representations.

53.    Plaintiffs' loans were void under the usury or licensing laws of their home states, and it was unlawful for any person to collect any interest and, in some instances, principal, on the void loans.

54.    Additionally, because Plaintiffs' loan were void, it was false and misleading for Defendants to represent that Plaintiffs owed an outstanding balance on the loans.

## CAUSES OF ACTION

### COUNT ONE:
### VIOLATION OF FDCPA, 15 U.S.C. § 1692e
### (CLASS CLAIM AGAINST ALL DEFENDANTS)

55.    Plaintiffs incorporate by reference each of the allegations set forth in the preceding paragraphs.

56.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a class (the "FDCPA § 1692e Class") initially defined as:

> All consumers: (1) located in any state other than Utah or Nevada; (2) who took out a loan with AWL; and (3) who were the subject of collection or attempted collection by any of the Defendants.

> Plaintiffs Mao, Barclay, Staddon, Harvey, Estrada, Rolon, and Croxford are members of this class.

57.    **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all is impractical. Class members are spread across the United States. The class members' names and addresses are identifiable through

the Defendants' internal business records, and the class members may be notified of the pendency of this action by published or mailed notice.

58. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether Defendants are debt collectors; (2) whether Defendants violated § 1692e of the FDCPA by attempting to collect debts that were unlawful; and (3) the appropriate amount of statutory damages.

59. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative class member. In addition, Plaintiffs are entitled to relief under the same causes of action as the other members of the putative class. All claims are based on the same facts and legal theories.

60. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiffs are adequate representatives of the putative class because their interests coincide with, and are not antagonistic to, the interests of the members of the class that they seek to represent. Plaintiffs have retained counsel competent and experienced in class-action litigation, and they intend to continue to prosecute the action vigorously. Plaintiffs and their counsel will fairly and adequately protect the putative class members' interests. Neither Plaintiffs nor their counsel have any interests that might cause them to not vigorously pursue this action.

61. **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The

damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation. Even if the putative class members could afford individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

62.     Defendants violated § 1692e by using unfair and deceptive practices to collect on the invalid or unenforceable debts, including by: indicating to Plaintiffs that they owed amounts that they did not owe, and deceptively labeling the debts as though they were legal, valid, and enforceable when they were not.

63.     Plaintiffs and the putative class members suffered actual damages in the form of payments made as a result of Defendants' violations of § 1692e.

64.     Based on Defendants' violations of § 1692e, Plaintiffs seek, individually and on behalf of the FDCPA § 1692e Class, actual damages, statutory damages, reasonable attorneys' fees, and costs, under 15 U.S.C. § 1692k.

**COUNT TWO:**
**VIOLATION OF FDCPA, 15 U.S.C. § 1692f**
**(CLASS CLAIM AGAINST ALL DEFENDANTS)**

65.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

66.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a class—the "FDCPA § 1692f Class"—initially defined as:

All consumers: (1) located in any state other than Utah or Nevada; (2) who took out a loan with AWL; and (3) who were the subject of collection or attempted collection by any of the Defendants.

Plaintiffs Mao, Barclay, Staddon, Harvey, Estrada, Rolon, and Croxford are members of this class.

67.   **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all is impractical. Class members are spread across the United States. The class members' names and addresses are identifiable through the Defendants' internal business records, and the class members may be notified of the pendency of this action by published or mailed notice.

68.   **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The common questions include: (1) whether Defendants are debt collectors; (2) whether Defendants violated § 1692f of the FDCPA by attempting to collect debts that were not permitted by law; and (3) the appropriate amount of damages.

69.   **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative class member. In addition, Plaintiffs are entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

70.   **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4)**. Plaintiffs are adequate representatives of the putative class because their interests coincide with, and are not antagonistic to, the interests of the class members that they seek to represent. Plaintiffs have retained counsel competent and experienced in class-action litigation, and they intend to continue to prosecute the

action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the class members. Neither Plaintiffs nor their counsel have any interests that might cause them to not vigorously pursue this action.

71.     **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for the class members to effectively redress the wrongs done to them in individual cases. Even if the class members could afford individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system because of the legal and factual issues raised by Defendants' conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

72.     Defendants violated § 1692f by attempting to and collecting amounts from Plaintiffs and class members that were not "permitted by law." The illegal loans are, by definition, not amounts that are due to be paid through a valid, legal agreement. Instead, the debts were void or unenforceable under state law or federal law.

73.     Defendants also violated this section by threatening to take legal action such as "forceful garnishments," "location orders," and wage garnishments when there was not court case pending and they had no intent to file a court case.

17

74.     Plaintiff and the putative class members suffered actual damages as a result of Defendants' violations of § 1692f.

75.     Based on Defendants' violations of § 1692f, Plaintiffs seek, individually and on behalf of the FDCPA § 1692f Class, actual damages, statutory damages, reasonable attorneys' fees, and costs, pursuant to 15 U.S.C. § 1692k.

**COUNT THREE:**
**VIOLATION OF FDCPA, 15 U.S.C. § 1692c**
**(INDIVIDUAL CLAIM AGAINST GLOBAL TRUST, PUSATERI AND PARAMOUNT)**

76.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

77.     Defendants violated § 1692c by contacting Plaintiff Croxford's parents, aunt, and brother indicating there were two civil actions against her.

78.     Defendants violated § 1692c by contacting Plaintiff Estrada's mother and sister regarding their efforts to collect the debt.

79.     Plaintiffs Croxford and Estrada suffered actual damages as a result of Defendants' violations of § 1692c.

80.     Based on Defendants' violations of § 1692f, Plaintiffs Croxford and Estrada seek, their actual damages, statutory damages, reasonable attorneys' fees, and costs, pursuant to 15 U.S.C. § 1692k.

**COUNT FOUR:**
**VIOLATIONS OF RICO, 18 U.S.C. § 1962(c)**
**(CLASS CLAIM AGAINST ALL DEFENDANTS)**

81.     Plaintiffs incorporate by reference each of the allegations set forth in the preceding paragraphs.

82.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this

action for themselves and on behalf of a class (the "RICO § 1962(c) Class") initially defined as:

> All consumers: (1) located in any state other than Utah or Nevada; (2) who took out a loan with AWL; and (3) who were the subject of collection or attempted collection by any of the Defendants.

> Plaintiffs Mao, Barclay, Staddon, Harvey, Estrada, Rolon, and Croxford are members of this class.

83.     **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all is impractical. The class members are geographically disbursed throughout the United States. The class members' names and addresses are identifiable through the Defendants' internal business records, and the class members may be notified of the pendency of this action by published or mailed notice

84.     **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether Defendants are members of the enterprise that collects unlawful debts; (2) whether Defendants participated in the management or affairs of the enterprise and, thus, are liable for the collection of the illegal loans; (3) whether the loans were illegal under Virginia, Arizona, California, Florida, Indiana, Iowa's and other states' usury statutes; (4) the appropriate amount of damages; (5) the nature of Defendants' violations; and (6) and the extent that Defendants' violations were intentional.

85.     **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative class member. In addition, Plaintiffs are entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

86. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4)**. Plaintiffs are adequate representatives of the putative class because their interests coincide with, and are not antagonistic to, the interests of the members of the class that they seek to represent. Plaintiffs have retained counsel competent and experienced in such litigation, and they intend to continue to prosecute the action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the class members. Neither Plaintiffs nor their counsel have any interest that might cause them to not vigorously pursue this action.

87. **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for class members to effectively redress the wrongs done to them in individual cases. Even if the class members could afford individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

88. Defendants violated RICO by seeking to collect and, in fact, collecting interest on debts that were unlawful under multiple states' laws and that used triple-digit interest rates, including Virginia, Arizona, California, Florida, Indiana, and Iowa.

89.     As alleged above, Defendants violated § 1962(c) of RICO through the "collection of unlawful debt." 18 U.S.C. § 1962(c).

90.     RICO defines "unlawful debt" as a debt which was incurred in connection with "the business of lending money or a thing of value at a rate usurious under state or federal law, where the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6).

91.     Defendants, during the pertinent times, were directly and materially involved in this intentional misconduct and knew or should have known the subject loans were illegal under state law, but they pursued the scheme anyway.

92.     This conduct began after Defendant Global Trust purchased AWL debts in 2018, continues to date, and will be repeated again and again in the future to the detriment of consumers.

93.     Defendants' conduct is a part of a broader practice of frequent and persistent violations of RICO as to the illegal loans.

94.     Plaintiffs and the class members were injured as a result of Defendants' violations of 18 U.S.C. § 1962(c).

95.     Accordingly, Defendants are jointly and severally liable to Plaintiffs and the putative class members for their actual damages, treble damages, costs, and attorneys' fees pursuant to 18 U.S.C. § 1964(c).

### COUNT FIVE:
### VIOLATIONS OF RICO, 18 U.S.C. § 1962(d)
### (CLASS CLAIM AGAINST ALL DEFENDANTS)

96.     Plaintiffs incorporate by reference each of the allegations set forth in the preceding paragraphs.

97.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a class (the "RICO § 1962(d) Class") initially defined as:

All consumers: (1) located in any state other than Utah or Nevada; (2) who took out a loan with AWL; and (3) who were the subject of collection or attempted collection by any of the Defendants.

Plaintiffs Mao, Barclay, Staddon, Harvey, Mao, Estrada, Rolon, and Croxford are members of this class.

98. **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all is impractical. The class members are geographically disbursed throughout the United States. The class members' names and addresses are identifiable through the Defendants' internal business records, and the class members may be notified of the pendency of this action by published or mailed notice.

99. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether Defendants are members of the enterprise that collected unlawful debts; (2) whether Defendants conspired with others (including but not limited to their co-Defendants or AWL) to violate RICO; (3) whether the loans were illegal under Virginia, Arizona, California, Florida, Indiana, Iowa, and other states' usury statutes; (4) the appropriate amount of damages; (5) the nature of Defendants' violations; and (6) the extent that Defendants' violations were intentional.

100. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative class member. In addition, Plaintiffs are entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

101. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiffs are adequate representatives of the putative class because their interests coincide with, and are not antagonistic

to, the interests of the class members that they seek to represent. Plaintiffs have retained counsel competent and experienced in class-action litigation, and they intend to continue to prosecute the action vigorously. Plaintiffs and their counsel will fairly and adequately protect the putative class members' interests. Neither Plaintiffs nor their counsel have any interests that might cause them to not vigorously pursue this action.

102.    **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for class members to effectively redress the wrongs done to them in individual cases. Even if the class members could afford individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

103.    Defendants violated § 1962(d) of RICO by agreeing to violate § 1962(c), as evidenced by the agreements regarding the purchase and collection of the debt.

104.    Accordingly, Defendants are jointly and severally liable to Plaintiffs and the putative class members for actual damages, treble damages, costs, and attorneys' fees pursuant to 18 U.S.C. § 1964(c).

23

**COUNT SIX:**
**UNJUST ENRICHMENT**
**(CLASS CLAIM AGAISNT ALL DEFENDANTS)**

105.     Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

106.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a class—the "Unjust Enrichment Class"—initially defined as:

> All consumers: (1) located in any state other than Utah or Nevada; (2) who took out a loan with AWL; and (3) who made any payments to the Defendants.

Plaintiffs Barclay, Estrada, and Croxford are members of this class.

107.     **Numerosity**. **Fed. R. Civ. P 23(a)(1).** Based on the revenue collected from consumers, numerosity is easily satisfied. The putative class members are disbursed throughout the country, making joinder impracticable. Additionally, the class members' names and addresses are identifiable through the Defendants' internal business records, and the class members may be notified of the pendency of this action by published or mailed notice.

108.     **Predominance of Common Questions of Law and Fact**. **Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether Plaintiffs and the class members conferred a benefit on Defendants; (2) whether Defendants knew or should have known of the benefit; (3) whether Defendants retained an unjust benefit because the loans on which they collected payments were illegal; and (4) what is the proper recovery for Plaintiffs and the class members against each of Defendants.

109.   **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative class member. In addition, Plaintiffs are entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

110.   **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4)**. Plaintiffs are adequate representatives of the putative class because their interests coincide with, and are not antagonistic to, the interests of the class members that they seek to represent. Plaintiffs have retained counsel competent and experienced in class-action litigation, and they intend to continue to prosecute the action vigorously. Plaintiffs and their counsel will fairly and adequately protect the class members' interests. Neither Plaintiffs nor their counsel have any interests that might cause them to not vigorously pursue this action.

111.   **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for class members effectively redress the wrongs done to them in individual cases. Even if the class members could afford individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system because of the legal and factual issues raised by Defendants' conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

112.    All of the loans included in the class definition are void and unenforceable where they were made in violation of state usury and/or licensing laws.

113.    Plaintiffs conferred a benefit on Defendants when they repaid the loans that were illegal because they had no obligation to do so and, therefore, Defendants were owed nothing; Defendants knew or should have known of the benefit; and Defendants have been unjustly enriched through their receipt of any amounts in connection with the unlawful loans such that it would be inequitable for Defendants to retain the money they received.

114.    Accordingly, on behalf of themselves and all other consumers similarly situated, Plaintiffs seek to recover from Defendants, jointly and severally, all amounts repaid on the loan.

**COUNT SEVEN:**
**FRAUD**
**(INDIVIDUAL CLAIMS AGAINST ALL DEFENDANTS)**

115.    Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

116.    All of the Plaintiffs' loans are void or unenforceable where they were made in violation of state usury or licensing laws.

117.    Despite knowing this information, Defendants worked in concert to falsely indicate to the Plaintiffs that each of them were liable for the debts.

118.    Defendants also misrepresented to Plaintiffs Barclay, Harvey, Staddon, Estrada, Rolon, and Croxford that legal action or wage garnishment were pending if they did not make payments, even though Defendants had not, and did not intend, to take such action.

119.    Each Plaintiff relied on these false statements- Plaintiffs Barclay, Croxford and Estrada made payments- while each Plaintiff suffered emotional distress damages such as stress, anxiety and embarrassment.

120.     Accordingly, Plaintiffs seek to recover from Defendants, jointly and severally, actual damages, punitive damages, attorney's fees, and costs.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs request that the Court enter judgment on behalf of themselves and the classes they seek to represent against Defendants for:

A.     Certification for this matter to proceed as a class action;

B.     Actual, punitive, and statutory damages as pleaded herein;

C.     Injunctive relief as pleaded herein;

D.     Attorneys' fees, litigation expenses, and costs of suit; and

E.     Such other or further relief as the Court deems proper.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted,
**PLAINTIFFS,**

By:     */s/ Kristi C. Kelly*
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
**KELLY GUZZO, PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com

Leonard A. Bennett, VSB #37523
Craig C. Marchiando, VSB #89736
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, VA  23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email:  lenbennett@clalegal.com
Email: craig@clalegal.com

Irv Ackelsberg, (Pro Hac Vice Pending)
John J. Grogan, (Pro Hac Vice Pending)
David A. Nagdeman, (Pro Hac Vice Pending)
**LANGER, GROGAN & DIVER, PC**
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Telephone: (215) 320-5660
Facsimile: (215) 320-5703
Email: iackelsberg@langergrogan.com

Jason E. Causey, (Pro Hac Vice Pending)
**BORDAS & BORDAS, PLLC**
1358 National Road
Wheeling, WV 26003
Telephone: (304) 242-8410
Facsimile: (304) 284-4142
Email:  jcausey@bordaslaw.com
*Counsel for Plaintiffs*