**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

| | |
|---|---|
| SOLINA MAO, JAMES BARCLAY, SAMANTHA HARVEY, ANAHI ESTRADA, MARY ROLON, MELISSA CROXFORD, KAYCI STADDON, MONICA MAY, SOMMER FOLEY, KIMBERLY CHOURIO, PRESTON PARKER, SANDRA SCHLITZ, NAZARI CHAPPOTIN, LILIANA MORENO, BELETZA VAZQUEZ, AND SKYLAR HARRIS *individually and on behalf of all similarly situated individuals*, | Civil Action No. 4:21-cv-00065-RCY-LRL |
| Plaintiffs, | |
| vs. | |
| GLOBAL TRUST MANAGERS, LLC, *et al.,* | |
| Defendants. | |

**DEFENDANTS GLOBAL TRUST MANAGERS, LLC, GLOBAL TRUST MANAGEMENT, LLC'S, RTC INVESTORS, LLC AND REEL TIME CAPITAL, LLC'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................... 1

LEGAL STANDARD ............................................................................................................ 5

    I.      Standard of Review ................................................................................................ 5

ARGUMENT ......................................................................................................................... 7

    I.      The Amended Complaint fails to state a cause of action under the FDCPA ....... 7

          A.  Plaintiffs have not alleged facts to plausibly establish
              the debt was invalid .............................................................................. 8

          B.  The allegations are insufficient to hold Debt Buyer Defendants
              vicariously liable for the actions of Down Stream Collectors ............... 9

          C.  Plaintiffs fail to state a claim under Section 1692c of the FDCPA ........ 11

          D.  The Amended Complaint fails to assert facts necessary to show the
              actionable conduct occurred within the statute of limitations ............... 12

    II.     Plaintiffs' Factual Allegations Are Insufficient as a Matter of Law to Establish
          a RICO Violation or Conspiracy Against Defendants ......................................... 13

          A.  The Complaint fails to state a RICO cause of action ............................ 13

              1.  Plaintiffs have not pled facts sufficient to show that Defendants
                  conducted the affairs of a RICO "enterprise" ........................... 14

                   a.  The Amended Complaint does not adequately plead
                      the three structural features of an "enterprise" ............... 14

                   b.  The Amended Complaint does not sufficiently allege
                      Defendants conducted the affairs of the enterprise rather
                      than their own business affairs ....................................... 19

              2.  Plaintiffs cannot rely on ordinary business practices and
                  unsettled civil litigation for the establishment of a claim of
                  fraud ........................................................................................ 19

          B.  Plaintiffs have failed to establish a RICO Conspiracy under
               § 1962(d) .............................................................................................. 20

III.   The Amended Complaint Fails to Plead Facts Necessary to Establish their
       State Law Claims ................................................................................22

              A.   Plaintiffs fail to sufficiently plead a claim for unjust enrichment ..........22

              B.   Plaintiffs fail to sufficiently plead a claim under state licensing
                   and usury laws ........................................................................23

              C.   Plaintiffs fail to sufficiently plead a claim under the California Unfair
                   Competition Law .....................................................................26

              D.   Plaintiffs have failed to state a cause of action for fraud .......................26

              E.   This Court Should Decline to Exercise Supplemental Jurisdiction
                   Over State Law Claims...............................................................28

IV.    Plaintiffs are Not Entitled to a Declaratory Judgment on the Validity of the
       Underlying Debt................................................................................29

CONCLUSION.......................................................................................30

# TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia,*
917 F.3d 206 (4th Cir. 2019) ..........................................................24

*Adbul-Mumit v. Alexandria Hyundai, LLC,*
896 F.3d 278 (4th Cir. 2018) ........................................................6,11

*Atuahene v. City of Hartford,*
10 Fed. Appx. 33 (2d Cir. 2001).....................................................10

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...................................................................5,6,24

*Bank of Montreal v. Signet Bank,*
193 F.3d 818 (4th Cir. 1999) ..........................................................27

*Bel Fury Invs. Grp., L.L.C. v. Palisades Collection, L.L.C.,*
19 Neb. App. 883 (2012) .................................................................23

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007).......................................................................5,6,9

*Bickley v. Gregory,*
2016 WL 6306148 (E.D. Va. 2016) .................................................11

*Bickley v. Gregory,*
2016 WL 6398804 (E.D. Va. 2016) .................................................11

*Boyle v. United States,*
556 U.S. 938 (2009) ........................................................................15

*Brouwer v. Raffensperger, Hughes & Co.,*
199 F.3d 961 (7th Cir.2000) ...........................................................21

*Burnett v. Mortg. Elec. Registration Sys., Inc.,*
706 F.3d 1231 (10th Cir. 2013) .......................................................9

*Carlsbad Tech., Inc. v. HIF Bio, Inc.,*
556 U.S. 635 (2009) ........................................................................28

*Cedric Kushner Promotions, Ltd. v. King,*
533 U.S. 158 (2001)....................................................................14,19

*Cozmyk v. Prompt Recovery Servs., Inc.,*
851 F. Supp. 2d 991 (S.D.W. Va. 2012) ...........................................12

*Cruz v. Cinram Intl. Inc.,*
574 F.Supp.2d 1227 (N.D.Ala.2008) ...........................................21

*Davis v. Wells Fargo Bank*, N.A.,
2014 WL 106257 (E.D. Va. 2014).............................................27

*Durell v. Sharp Healthcare,*
183 Cal. App. 4th 1350 (2010) .................................................24

*Duty Free World, Inc. v. Miami Perfume Junction, Inc.,*
253 So. 3d 689 (Fla. Dist. Ct. App. 2018) ..............................23

*Ellege v. Friberg-Cooper Water Supply Corp.*
240 S.W.3d 869 (Tex. 2007) ....................................................23

*First Nationwide Sav. v. Perry,*
11 Cal. App. 4th 1657 (1992) ..................................................23

*Flip Mortg. Corp. v. McElhone,*
841 F.2d 531 (4th Cir. 1988) ...................................................13

*Francis v. Giacomelli,*
588 F.3d 186 (4th Cir. 2009) .....................................................6

*Gamboa v. Velez,*
457 F.3d 703 (7th Cir. 2006) ...................................................14

*GE Inv. Private Placement Partners II v. Parker,*
247 F.3d 543 (4th Cir. 2001) ...................................................21

*Gibbs v. Haynes Investments, LLC,*
368 F. Supp. 3d 901 (E.D. Va. 2019) ...........................17,18,20

*Gibbs v. Plain Green, LLC,*
Case No. 3:17-cv-00495-MHL (E.D. Va. 2018) ..........17,18,20

*Gibbs v. Plain Green, LLC,*
331 F. Supp. 3d 518 (E.D. Va. 2018) ......................................18

*Gibbs v. Sequoia Capital Operations, LLC,*
966 F.3d 286 (4th Cir. 2020) ...................................................13

*Gibbs v. Stinson,*

421 F. Supp. 3d 267 (E.D. Va. 2019) ...................................................................13,17

*Goodrow v. Friedman & MacFadyen, P.A.,*
2012 WL 6725617 (E.D. Va. 2012) .....................................................................19

*Grant v. Shapiro & Burson, LLP,*
871 F. Supp. 2d 462 (D. Md. 2012) .....................................................................20

*Green v. Rosenberg & Assocs., LLC,*
2018 WL 1183655 (D. Md. Mar. 7, 2018) ...........................................................11

*Green v. Rosenberg & Assocs., LLC for PrimeStar-H Fund I Tr.,*
731 F. App'x 240 (4th Cir. 2018) ........................................................................11

*Harrison v. Westinghouse Savannah River Co.,*
176 F.3d 776 (4th Cir. 1999) ................................................................................7

*Hemi Group, LLC v. City of New York,*
559 U.S. 1 (2010) .................................................................................................21

*Kern v. Freed,*
299 S.E.2d 363 (Va. 1983) ...................................................................................22

*Lambeth v. Bd. of Comm'rs of Davidson County,*
407 F.3d 266 (4th Cir. 2005) ................................................................................5

*Laporte v. Midland Funding LLC,*
2020 WL 2814184 (W.D. Va. 2020) ......................................................................7

*Lewis v. Diamond Essentials, Inc.,*
2010 WL 3070365 (S.D. Cal. Aug. 5, 2010) .......................................................13

*Lokhova v. Halper,*
995 F.3d 134 (4th Cir. 2021) ...............................................................................10

*Ludyjan v. Cont'l Cas. Co.,*
308 Wis.2d 398, 405 (2008) ................................................................................23

*McCauley v. Home Loan Inv. Bank, F.S.B.,*
710 F.3d 551 (4th Cir. 2013) ...............................................................................27

*Mitchell Tracey v. First Am. Title Ins. Co.,*
935 F. Supp. 2d 826 (D. Md. 2013) .....................................................................20

*Myers v. Lee,*
2010 WL 3745632 (E.D. Va. 2010) .....................................................................19

*Nash v. Green Tree Servicing, LLC,*
943 F.Supp.2d 640, 654 (E.D. Va. 2013) ........................................................11

*Navient Solutions, LLC v. Krohn & Moss, Ltd.,*
2018 WL 6790654 (E.D. Va. 2018).........................................................7,13,14

*Nesby v. Country Mut. Ins. Co.,*
346 Ill. App. 3d 564 (2004) ...........................................................................23

*Nunes v. Fusion GPS,*
2021 WL 1225983 (E.D. Va. 2021)...........................................................14,19

*Ott v. Md. Dep't of Pub. Safety & Corr. Servs.,*
909 F.3d 655(4th Cir. 2018) ...........................................................................12

*Palmetto State Med. Ctr. v. Operation Lifeline,*
117 F.3d 142 (4th Cir. 1997) ...........................................................................14

*Reves v. Ernst & Young,*
507 U.S. 170 (1993)...........................................................................................14

*Robbins v. Oklahoma,*
519 F.3d 1242 (10th Cir. 2008) .......................................................................10

*Robinson v. Moynihan,*
2021 WL 2346107 (E.D. Va. 2021)...........................................................6,9,11

*Rosetta Stone Ltd. v. Google, Inc.,*
676 F.3d 144 (4th Cir. 2012) ...........................................................................22

*Shanaghan v. Cahill,*
58 F.3d 106 (4th Cir. 1995) .............................................................................28

*Solomon v. Am. Web Loan,*
2019 WL 1320790 (E.D. Va.)....................................................................*passim*

*State, Dep't of Hum. Servs. ex rel. Palmer v. Unisys Corp.,*
637 N.W.2d 142 (Iowa 2001) ...........................................................................23

*Stewart v. Bierman,*
859 F. Supp. 2d 754 (D. Md. 2012) ...................................................................7

*Troyk v. Farmers Grp., Inc.,*
171 Cal. App. 4th 1305 (2009) .........................................................................26

*Turton v. Virginia Dep't of Educ.,*

2014 WL 12539403 (E.D. Va. 2014) ................................................................6

*United States v. Pinson,*
860 F.3d 152 (4th Cir. 2017) ................................................................. 14

*US Airline Pilots Ass'n v. Awappa*, LLC,
615 F.3d 312 (4th Cir. 2010) ................................................................. 14

*U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.,*
612 F.3d 724 (4th Cir. 2010) ................................................................7

*Walker v. Cotter Properties, Inc.,*
181 S.W.3d 895 (Tex. App. 2006) ................................................................23

*Walter v. Drayson,*
538 F.3d 1244 (9th Cir. 2008) ................................................................14

*Walters v. McMahen,*
795 F. Supp. 2d 350, 355 (D. Md. 2011) ................................................21

*Wang Elec., Inc. v. Smoke Tree Resort, LLC,*
230 Ariz. 314 8 (Ct. App. 2012) ................................................................23

*Yesko v. Fell,*
2014 WL 4406849 (D. Md. 2014) ................................................................20

*Yin v. CTI Consultants, Inc.,*
 2018 WL 1569486, at *10 (E.D. Va. 2018) ................................................29

## **Rules and Statutes**

28 U.S.C. § 1332(a)(1) ................................................................28

28 U.S.C. § 1367(c)(3) ................................................................28

California Business and Professions Code § 17200 ................................1,26

Fed. R. Civ. P. 8 ................................................................10

Fed. R. Civ. P. 9(b) ................................................................7,20,27

Fed. R. Civ. P. 12(b)(6) ................................................................1,5, 19

Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ................................*passim*

Fair Debt Collection Practices Act, 15 U.S.C. § 1692c ................................*passim*

Fair Debt Collection Practices Act, 15 U.S.C. § 1692c(b) ....................................................11

Fair Debt Collection Practices Act, 15 U.S.C. § 1692e.......................................................4,7,8

Fair Debt Collection Practices Act, 15 U.S.C. § 1692f .....................................................4,7,8,9

Fair Debt Collection Practices Act, 15 U.S.C. § 1692k(d)....................................................12

Iowa Code Ann. § 536.1 .........................................................................................25

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ...........................*passim*

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) .......................*passim*

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d) .......................21,22

Va. Code Ann. § 6.2-305 ........................................................................................25

Wis. Stat. Ann. § 138.14(15) ....................................................................................25

Wis. Stat § 893.62 .................................................................................................26

Defendants, Global Trust Managers, LLC ("GT Managers"), Global Trust Management, LLC ("GTM"), RTC Investors, LLC ("RTC") and Reel Time Capital, LLC ("Reel Time") (collectively, "Debt Buyer Defendants")[1] respectfully submit this memorandum in support of their motion to dismiss the claims asserted against them for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA") (Counts One, Two, and Three), the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, et seq. ("RICO") (Counts Four and Five), unjust enrichment (Count Six), licensing and usury laws (Count Seven), declaratory judgment (Count Eight), unfair competition in violation of California Business and Professions Code § 17200 (Count Nine) and fraud (Count Ten) pursuant to Fed. R. Civ. P. 12(b)(6). (See Dkt. 24, the "Amended Complaint").[2]

## PRELIMINARY STATEMENT

Plaintiffs Solina Mao, James Barclay, Samantha Harvey, Anahi Estrada, Mary Rolon, Melissa Croxford and Kayci Staddon (collectively "Plaintiffs") commenced this action, on behalf of a purported class, seeking money damages and a determination that certain loans originated by non-party American Web Loan, Inc. ("AWL") are illegal and unenforceable. After filing its Complaint, Plaintiffs then moved for preliminary injunction on June 15, 2021. (Dkt. 7). Certain Debt Buyer Defendants filed their opposition on June 29, 2021 (Dkt. 8) and moved to dismiss the

---

[1] The Amended Complaint refers to the moving defendants as the "Debt Buyer Defendants," based on the allegation that they have purchased Plaintiffs' American Web Loan debt. (Dkt. 24, ¶¶ 5, 79). Moving defendants adopt this label for the sole purpose of convenience and without admission of any of the allegations asserted against them in the Amended Complaint.

[2] Bradley Spoor ("Spoor") has been named in the Amended Complaint but not yet served. He is included in the definition of Debt Buyer Defendants (Dkt. 24, ¶ 5) and, accordingly, all claims should be dismissed against him for the same reasons they should be dismissed against all other Debt Buyer Defendants. However, given that he has not been served and thus his time to respond to the pleading has not yet started, he reserves the right to move to dismiss on the same grounds articulated herein, as well as any others available to him.

Complaint on July 8, 2021. (Dkt. 17). On July 13, 2021, Plaintiffs withdrew their motion for preliminary injunction and noticed their intention to file an amended complaint. (Dkt. 20). Plaintiffs filed an Amended Complaint on July 29, 2021, adding nine lead plaintiffs - Monica May, Sommer Foley, Kimberly Chourio, Preston Parker, Sandra Schlitz, Nazari Chappotin, Liliana Moreno, Beletza Vazquez, and Skylar Harris (incorporated with the collective "Plaintiffs"), three causes of action and four additional defendants. (Dkt. 24). Debt Buyer Defendants now move to dismiss the Amended Complaint.

Paramount Assets Protections Services, LLC ("Paramount"), Jeffrey Pusateri ("Pusateri"), Direct Recovery Services, LLC ("DRS") and Nationwide Capital Services, LLC ("NCS") (collectively "Down-Stream Collectors") have not yet appeared or moved in this action. (Debt Buyer Defendants and Down-Stream Collectors are collectively referred to as "Defendants").

Plaintiffs' claims stem from loans they obtained from AWL in unspecified amounts while they resided in Virginia, Arizona, California, Florida, Indiana, Iowa, Nebraska, Texas, Louisiana and Wisconsin on unspecified dates. (Dkt. 24, ¶¶ 1, 10-25). It is alleged that each of the Plaintiffs entered into agreements with AWL that contained arbitration and choice of law provisions fixing the governing law as the law of the Otoe-Missouria, including as applied to allowable interest rates. (*Id*. at ¶¶ 47-48, 51). It is further alleged that the interest rate for each loan exceeds the maximum rate allowed under the respective laws of each of those states, and that almost all states render unlicensed small loans, such as Plaintiffs', to be illegal. (*Id*. at ¶¶ 52-55). It is not alleged that Debt Buyer Defendants ever lent money or were a party to the agreements between Plaintiffs and AWL, but rather that Debt Buyer Defendants merely purchased the debt after Plaintiffs defaulted on the terms. (*Id*. at ¶ 79). Notably, the Amended Complaint does not allege which of

the Debt Buyer Defendants owned the debt at the time of the alleged collection activities. (*Id.* at ¶¶ 81-167), instead grouping the Debt Buyer Defendants together as if they are one and the same.[3]

Plaintiffs' Amended Complaint is almost entirely premised on the proceedings in *Solomon v. American Web Loan Inc.*, No. 4:17-cv-0145-HCM-RJK (E.D. Va.) ("*Solomon*").[4] Defendants are not parties to *Solomon*. Despite this, Plaintiffs cite to *Solomon* for the proposition that mere reference to the settled claims in that case is sufficient to establish the predicate illegal conduct necessary to plead their claims in *this* case. By way of example, Plaintiffs invite the assumption that a settlement of the claims in *Solomon* renders all loans made by AWL illegal and uncollectable. (Dkt. 24, ¶ 4). At paragraph 4, Plaintiffs assert their claims against AWL "were resolved"[5] but do not actually allege any sort of adjudication on the legality of the debt. Importantly, in the *Solomon* Revised Settlement Agreement dated March 31, 2021, the *Solomon* plaintiffs have admitted the allegations remain in dispute; the *Solomon* defendants have denied any liability or wrongdoing; there has not been any adjudication on the merits of any underlying claims; and there are no overlapping defendants. *Solomon, supra*, Dkt. 783-1, p. 8. Thus, Plaintiffs' reliance on *Solomon* to establish the alleged illegality or unenforceability of the AWL loans is misplaced.

---

[3] Other than naming them as Defendants and implicating them by potential ownership of the debt in question, there is not a single factual allegation of any kind to suggest that GT Managers, Reel Time or RTC participated in, or was even aware of, any conduct at issue here.

[4] In *Solomon*, plaintiffs asserted, *inter alia*, RICO claims against AWL and others on the premise that they perpetrated a "rent-a-tribe" scheme to charge exceedingly high interest rates on payday loans. *Solomon v. Am. Web Loan*, 2019 WL 1320790 (E.D. Va. 2019).

[5] This is misleading because the allegation in that case remain very much in dispute, though the case has settled due to, according to the *Solomon* plaintiffs, the uncertainty of trial. (*Solomon*, Memorandum of Law in support of Plaintiffs' Motion for Final Approval of Revised Class Action Settlement, dated May 25, 2021 at page 18 (4:17-CV-145 Dkt. 489)).

Plaintiffs seek to implicate Debt Buyer Defendants in the *Solomon* "rent-a-tribe" scheme without any factual support to associate Defendants to the *Solomon* defendants or their alleged "enterprise" other than as a purchaser of *some* of the AWL debt at *some* point in time after Plaintiffs defaulted. (Dkt. 24, ¶ 79). These facts are wholly insufficient to make out a RICO claim against Defendants, let alone the numerous other causes of action rooted firmly in the liability theories alleged in *Solomon* which have never been adjudicated.

Based on only broad, generalized allegations against Defendants, the Amended Complaint asserts the following nine causes of action: three FDCPA violations; two civil RICO causes of action; unjust enrichment; violation of various state's usury and licensing statutes; unfair competition under California state law; and fraud. (Dkt. 24). In reliance on the usury and licensing claims, Plaintiffs also assert a cause of action for a declaratory judgment that the loans are invalid and uncollectable. Defendants' liability rests on four theories. The first is that Defendants are debt collectors who attempted to, or did collect debt that they knew, or should have known, resulted from "illegal" loans. (Dkt. 24, ¶¶ 26-30, 236, 284-286). The second theory is that Defendants made false, deceptive, or misleading representations and engaged in deceptive and unfair practices in the collection of debt and/or contacted third parties without consent. 15 U.S.C. §§ 1692e, 1692f, 1692c. (Dkt. 24, ¶¶ 184, 197, 202). The third theory rests on the conclusory allegations that Debt Buyer Defendants joined with Down-Stream Collectors to form an "association-in-fact" enterprise for the purpose of collecting on illegal loans with full knowledge of a larger "rent-a-tribe" scheme. (Dkt. 24, ¶¶ 72-78, 216). By reason of their agreement to collect illegal debt with these other entities, Plaintiffs assert that Defendants conspired to violate RICO. (Dkt. 24, ¶ 225). Finally, Plaintiffs argue that Defendants lent money in violation of various state licensing and usury laws. (Dkt. 24, ¶¶ 247-249).

As set forth in greater detail below, Plaintiffs' conclusory allegations that largely lump all the Defendants together should be dismissed as against Debt Buyer Defendants for failure to state a claim for relief. Primarily, most of Plaintiffs' claims rest entirely on a finding that the interest rate of the underlying AWL loan is usurious, an issue that has never been adjudicated. Despite this obvious gap in Plaintiffs' theory of liability, the Amended Complaint is devoid of any facts that plausibly demonstrate that Plaintiffs' loans were subject to interest rates in excess of their respective state usury laws. Shockingly, Plaintiffs do not detail the principal loan amounts, or the interest rate applied to their respective loans. Without these vital details, particularly the interest rate at issue, Plaintiffs cannot make out a claim for usury. As a result, all of Plaintiffs' causes of action, except for two FDCPA claims, fail as a matter of law. The remaining FDCPA claims fail for other reasons discussed herein.

**LEGAL STANDARD**

## I.      Standard of Review

For the Amended Complaint to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, it must contain "enough facts to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *See Lambeth v. Bd. of Comm'rs of Davidson County*, 407 F.3d 266, 268 (4th Cir. 2005). A claim will be found facially plausible "when the Plaintiffs pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Twombly*, 550 U.S. at 556). This plausibility standard requires that a complaint "demonstrate more than a sheer possibility that a defendant acted unlawfully." *Id*. Said differently, the Complaint must allege facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. If Plaintiffs have not "nudged

[their] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly,* 550 U.S. 544 at 570.

Although the Court must "take all of the factual allegations in the complaint as true" for purposes of a 12(b)(6) motion, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. Further, even drawing all reasonable inferences in plaintiffs' favor, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[N]aked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

Pleadings, like Plaintiffs' Amended Complaint here, that present a series of allegations in conclusory form in such a way that makes it "virtually impossible to ascertain what claims are asserted against which defendants and on what legal basis the respective claims are founded" are impermissible. *Turton v. Virginia Dep't of Educ.*, 2014 WL 12539403, at *2 (E.D. Va. 2014). So-called "shotgun pleadings" violate even the liberal pleading standards of Rule 8(a), which require only that Plaintiffs submit a "short and plain statement of the claim showing that [they are] entitled to relief." *Id.; See Robinson v. Moynihan*, 2021 WL 2346107, at *2-3 (E.D. Va. 2021). In this regard, while collectively referring to multiple defendants is not prohibited by Rule 8, a plaintiff must still identify the factual basis for their claims in the body of the pleading. *Adbul-Mumit v. Alexandria Hyundai, LLC,* 896 F.3d 278, 291 (4th Cir. 2018) (affirming district court decision dismissing complaint for failing to include specific allegations against individual defendants.)

Finally, with respect to Plaintiffs' RICO and fraud claims, the Amended Complaint must contain sufficient factual allegations to meet "the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires particularity for claims of fraud." *Navient Solutions, LLC v. Krohn & Moss, Ltd.*, 2018 WL 6790654, at *6 (E.D. Va. 2018). Rule 9(b) expressly requires any such party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This requires that a complaint, "at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.,* 612 F.3d 724, 731 (4th Cir. 2010); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999); Fed. R. Civ. P. 9.

## ARGUMENT

## I.   The Amended Complaint fails to state a cause of action under the FDCPA.

In Counts One and Two, the Amended Complaint alleges all Defendants, collectively, violated 15 U.S.C. §§ 1692e and 1692f. (Dkt. 24, ¶¶ 176-200). In Count Three, the Amended Complaint alleges Debt Buyer Defendants, Paramount and Pusateri violated § 1692c. (*Id*. at 24, ¶¶ 200-205). "To succeed on a FDCPA claim, a Plaintiff must demonstrate that, "(1) the Plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Laporte v. Midland Funding LLC*, 2020 WL 2814184, at *3 (W.D. Va. 2020) *citing Stewart v. Bierman*, 859 F. Supp. 2d 754, 759–60 (D. Md. 2012).

Count One (§ 1692e) is predicated upon general allegations that Debt Buyer Defendants attempted to collect debt originating from an AWL loan with a usurious interest rate. (*Id*. at ¶ 184). Count Two (§ 1692f) is premised on allegations that Defendants threatened to take legal action they were not permitted to take or did not intend on taking. (*Id*. at ¶ 197). Lastly, Count Three (§

1692c) is asserted based upon allegations that Paramount contacted family members of the Plaintiffs and discussed the details of their debts. (*Id*. at ¶¶ 202-203).

For the reasons discussed below, each theory fails as a matter of law. First, because the Amended Complaint is devoid of any factual content that would permit the Court to draw the reasonable inference that Plaintiffs' debts are illegal or uncollectable, Count One, predicated on § 1962(e), must be dismissed. Second, Counts Two and Three, predicated on §§ 1962f and c, must also be dismissed because none of the Debt Buyer Defendants are alleged to have engaged in actionable conduct. To the extent that Down-Stream Collectors engaged in actionable conduct, the Amended Complaint fails to assert facts that show any Debt Buyer Defendant could plausibly be vicariously liable for said conduct. Finally, the Amended Complaint does not allege any sufficient facts to determine if the conduct occurred within the statute of limitations. Accordingly, dismissal of Counts One, Two and Three of the Amended Complaint is warranted.

## A. Plaintiffs have not alleged facts to plausibly establish the debt was invalid.

In Count One, Plaintiffs allege generally that Defendants used unfair and deceptive practices in the attempted or actual collection of illegal debt in violation of FDCPA § 1692e. This claim is based entirely on the premise that the AWL debt at issue is illegal. (Dkt. 24, ¶ 184). Plaintiffs' AWL debt has not been deemed illegal, either by the *Solomon* court or any other tribunal, and the Amended Complaint does not assert any facts to independently establish the illegality of Plaintiffs' debt. The Amended Complaint asserts Plaintiffs obtained "high interest rate" loans in violation of state usury laws. (Dkt. 24, ¶¶ 52, 250). Astonishingly, the Amended Complaint does not specify the amounts of the loans, the interest rates applicable to the loans, or the dates the Plaintiffs borrowed the funds. Stated differently, the Amended Complaint is devoid

of sufficient facts which "nudge [their § 1692e] claim across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570.

Because Plaintiffs have not stated facts which purport to show that their specific debts were illegal, then Plaintiffs have not plausibly demonstrated Debt Buyer Defendants violated FDCPA § 1692e in their efforts to collect it. *See Robinson*, *supra* at *5 ("When a plaintiff asserts nonspecific violations of the FDCPA with 'zero details or concrete examples,' he has not established a claim.") (*quoting Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1240 (10th Cir. 2013)). Accordingly, Count One of the Amended Complaint should be dismissed.

## B. The allegations are insufficient to hold Debt Buyer Defendants vicariously liable for the actions of Down-Stream Collectors.

The Amended Complaint largely lacks specific factual allegations regarding Debt Buyer Defendants' interaction with any consumers, other than the instances GTM made direct contact with Plaintiffs Barclay, Harvey, Rolon, Croxford, Chourio, Parker and Moreno. Plaintiffs, however, do not allege that GTM's communications were in violation of §§ 1692f and 1692c. Rather, Plaintiffs rely on the theory of vicarious liability to hold Debt Buyer Defendants accountable for the collection activities of the debt collectors Structured Settlement and Paramount. This theory fails for two reasons. First, the Amended Complaint does not identify which Debt Buyer Defendant the Down-Stream Collector was collecting for; and second, the Amended Complaint lacks facts necessary to establish an agency relationship between them.

In mostly vague and general terms, the Amended Complaint details each Plaintiffs' contact with one or more Down-Stream Collector regarding their AWL debt. *(*Dkt. 24. at ¶¶ 81-172). What the Amended Complaint fails to do, however, is specify which of the four potential purchasers of the debt – GT Managers, GTM, RTC or Reel Time – allegedly owned the debt at the time of the collection efforts. For each Plaintiff, the Amended Complaint merely asserts, "Debt Buyer

Defendants acquired [his/her] loan and subsequently placed it for collection with one or more Down-Stream Collector Defendants." (*Id*. at ¶¶ 81, 84, 96, 99, 107, 113, 122, 127, 133, 139, 145, 149, 154, 158, 163, 167.) This broad language is grossly insufficient to attribute the alleged actionable conduct of the debt collector by way of vicarious liability to one of four Debt Buyer Defendants who alleged owned the debt, and they could not have all owned the same debt at the same time. "Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008); *see also Atuahene v. City of Hartford*, 10 Fed. Appx. 33, 34 (2d Cir. 2001) (affirming dismissal of the complaint on the grounds that it was vague and conclusory in violation of Fed. R. Civ. Pr. 8 because "[t]he complaint failed to differentiate among the defendants, alleging instead violations by 'the defendants' and failed to identify any factual basis for the legal claims made").

In the Amended Complaint, Plaintiffs fail to particularize the nature of the relationship between the Debt-Buyer Defendant and the Down-Stream Collector which purportedly acted in violation of the FDCPA in a manner sufficient to establish a relationship necessary for vicarious liability. *See Lokhova v. Halper,* 995 F.3d 134, 147 (4th Cir. 2021) (holding that an amended complaint's general theories of vicarious liability by way of authorization or apparent authorization were insufficient to establish vicarious liability). Further, the Amended Complaint fails to allege a necessary element of a vicarious liability claim – that the principal exercised control over the agent. Remarkably, nowhere in the Amended Complaint do Plaintiffs allege that Debt Buyer Defendants exerted any type of management or control over the conduct of any Down-Stream Collectors. To the contrary, the allegation that Debt Buyer Defendants "contracted" with

Down-Stream Collectors suggests they were completely separate entities, as does the allegation that Pusateri controlled Paramount. (Dkt. 24, ¶¶ 65, 34). Plaintiffs' conclusory allegations that, upon information and belief, Defendant Debt-Buyers knew, or should have known, Down-Stream Collectors would use aggressive tactics to collect the debt is wholly insufficient to establish control. "Courts have consistently held that for a principal to be vicariously liable, it must exercise control over the conduct and activities of the agent." *Nash v. Green Tree Servicing, LLC*, 943 F.Supp.2d 640, 654 (E.D. Va. 2013); *Bickley v. Gregory*, 2016 WL 6306148, at *4 (E.D. Va. 2016), *report and recommendation adopted*, 2016 WL 6398804 (E.D. Va. 2016).

Because Plaintiffs do not offer a clear delineation between the Down-Stream Collector's alleged conduct, or the existence of an agency relationship amongst them, Plaintiffs fail to meet even the liberal pleading requirements of Rule 8 and they claims against Defendant Debt-Buyers must be dismissed. *See Robinson*, *supra* at *2-3; *Adbul-Mumit*, *supra* at 291; *Green v. Rosenberg & Assocs., LLC*, 2018 WL 1183655, at *2 (D. Md. Mar. 7, 2018), *aff'd sub nom. Green v. Rosenberg & Assocs., LLC for PrimeStar-H Fund I Tr.*, 731 F. App'x 240 (4th Cir. 2018).

## C.  Plaintiffs fail to state a claim under Section 1692c of the FDCPA.

Count Three of the Amended Complaint, which is alleged against Debt Buyer Defendants, Paramount and Pusateri, requires that Plaintiffs allege facts sufficient to establish that they communicated with third parties in connection with the collection of a debt. 15 U.S.C. § 1692c(b). (Dkt. 24, ¶¶ 201-205). The only factual allegations which plausibly support this cause of action are made against Paramount, not Debt Buyer Defendants, in contacting the family members of Plaintiffs, Estrada, Rolon, Croxford, Foley, Schlitz and Chappotin and discussing details of the debts. The sparse factual account of the calls to Plaintiffs' family members, however, lack the specificity required to constitute a § 1692c(b) violation. For example, the Amended Complaint alleges that Paramount allegedly contacted Schlitz's husband and children "regarding the AWL

loan." (Dkt. 24, ¶ 153). Similarly, Paramount contacted Chappotin's mother and sister "regarding the AWL loan" and Estrada's mother and sister "regarding Plaintiff Estrada's debt." (Dkt. 24, ¶ 157). The lack of detail as to what was said to these Plaintiffs' family members in connection with the debt renders these claims subject to dismissal against even Paramount, but also as to Debt Buyer Defendants. *Cozmyk v. Prompt Recovery Servs., Inc.,* 851 F. Supp. 2d 991, 995 (S.D.W. Va. 2012) (motion to dismiss granted for failure of complaint to allege "that a third party actually received or understood the message.") Further, given the inability to establish any Debt Buyer Defendant should be held vicariously liable for the actions of a Down-Stream Collector, this claim must be dismissed against all Debt Buyer Defendants.

### D. The Amended Complaint fails to assert facts necessary to show the actionable conduct occurred within the statute of limitations.

Plaintiff's FDCPA claims are subject to a one-year statute of limitations period. 15 U.S.C. § k(d). "A court may dismiss a complaint on statute of limitations grounds 'if the time bar is apparent on the face of the complaint.'" *Ott v. Md. Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 658 (4th Cir. 2018) (citation omitted) (affirming dismissal of complaint as untimely). Here, several of Plaintiffs' FDCPA claims against Debt Buyer Defendants must be dismissed because the Amended Complaint fails to allege facts to show the claims were brought in a timely manner.

With respect to Plaintiff Rolon, the Amended Complaint does not specify the date GTM contacted her, or the dates Paramount contacted her or her family members. (Dkt. 24, ¶¶ 108-112). Similarly, the Amended Complaint fails to allege when Plaintiffs Skaddon, May, Foley, Chourio, Schlitz, Chappotin, Vasquez, or their respective family members, were contacted by any of the Defendants. (Dkt. 24, ¶¶ 122-126, 127-143, 149-157, 163-165). The Amended Complaint asserts GTM contacted Plaintiff Croxford in or around February 18, 2020, which is clearly outside the limitations period, and does not specify when Paramount subsequently contacted her or her family

members. (Dkt. 24, ¶¶ 114-121). The omission of the dates of these alleged violations is a fatal

flaw to these Plaintiffs' FDCPA claims. *See Lewis v. Diamond Essentials, Inc.*, 2010 WL 3070365,

at *3 (S.D. Cal. Aug. 5, 2010) ("Because Plaintiff does not allege the dates of occurrence…,

Plaintiff has failed to establish[] that his claims were brought within the statute of limitations").

## II. Plaintiffs' Factual Allegations Are Insufficient as a Matter of Law to Establish a RICO Violation or Conspiracy Against Defendants.

### A. The Complaint fails to state a RICO cause of action.

Count Four of the Amended Complaint alleges that Defendants acted in violation of 18

U.S.C. § 1962(c), which makes it "unlawful for any person employed by or associated with any

enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct

or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of

racketeering activity or collection of unlawful debt."

To establish a § 1962(c), claim, the Amended Complaint must allege that Defendants "(1)

conducted the affairs of an enterprise (2) through the collection of unlawful debt (3) while

employed by or associated with (4) the enterprise engaged in, or the activities of which affect,

interstate or foreign commerce." *Gibbs v. Stinson*, 421 F. Supp. 3d 267, 312 (E.D. Va. 2019), aff'd

sub nom. *Gibbs v. Sequoia Capital Operations, LLC*, 966 F.3d 286 (4th Cir. 2020); 18 U.S.C. §

1962(c). Additionally, if a RICO claim is based on alleged fraudulent activity, as it is here, a

plaintiff must also meet "the heightened pleading standard of Federal Rule of Civil Procedure 9(b),

which requires particularity for claims of fraud." *Navient Sols.*, *supra* at *6.

It must be underscored that the Fourth Circuit's position is that "this circuit will not lightly

permit ordinary business contract or fraud disputes to be transformed into federal RICO claims."

*Flip Mortg. Corp. v. McElhon*e, 841 F.2d 531, 538 (4th Cir. 1988). "RICO, the federal claim at

issue, 'does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is

concerned with eradicating organized, long-term, habitual criminal activity." *US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (*citing Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006)).

### 1. Plaintiffs have not pled facts sufficient to show that Defendants conducted the affairs of a RICO "enterprise."

An enterprise exists if there is "evidence of an ongoing organization, formal, or informal" and "evidence that the various associates function as a unit." *Palmetto State Med. Ctr. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997). An "enterprise" requires proof of three elements: (1) a purpose, (2) "relationships among those associated with the enterprise," and (3) "longevity sufficient to permit these associates to pursue the enterprise's purpose." *United States v. Pinson*, 860 F.3d 152, 161 (4th Cir. 2017); *Nunes v. Fusion GPS*, 2021 WL 1225983 at *6 (E.D. Va. Mar. 31, 2021). An "enterprise" is distinct from a "person" under the RICO statute. *Palmetto*, *supra* at 148. Perhaps most pertinent to the allegations at issue here, "liability 'depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs.'" *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) (*citing Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)); *see also Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008) ("Simply performing services for the enterprise does not rise to the level of direction, whether one is "inside" or "outside"); *Navient Sols., supra* at *7 ("To be considered to have conducted or participated in the conduct of a RICO enterprise's affairs, a defendant must have participated in the operation or management of the enterprise itself").

### a. The Amended Complaint does not adequately plead the three structural features of an "enterprise."

The allegations made within the Amended Complaint describe at length the "rent-a-tribe" loan model "enterprise" purportedly designed to circumvent state usury laws by the defendants in

*Solomon* but offer no factual support or direct claims that Defendants were involved in that alleged "enterprise." (Dkt. 24, ¶¶ 1-4, 47-56). In reciting the *allegations* in *Solomon*, Plaintiffs describe a scheme in which AWL was the lender, Mark Curry was responsible for supplying business entities to lend and collect the money, and the Otoe-Missouria tribe passively "rented" their sovereign status in exchange for a portion of revenue. *Id.* Several key actors are named, as are their roles and methods in devising the scheme; but notably, the Amended Complaint is devoid of *facts* which might show how any of the Defendants here were a participant in the affairs of that "enterprise." (Dkt. 24, ¶¶ 47-55).

Rather than attempt to link Defendants to the "rent-a-tribe" scheme, Plaintiffs' RICO claims are predicated on the hollow allegations that Debt Buyer Defendants formed one or more "association-in-fact enterprises" with Down-Stream Collectors for the purpose of collecting unlawful debts. (Dkt. 24, ¶¶ 72-78). Critically, Plaintiffs do not allege any specific facts to show Defendants knew the debts were "unlawful." To the contrary, Plaintiffs have crafted their allegations in a way which defeats their RICO claims at the pleading stage. The Amended Complaint only asserts, "Debt Buyer Defendants knew *or should have known* that these loans charged a usurious interest rate" based on prior regulatory enforcement and private lawsuits. (Dkt. 24, ¶ 62). (emphasis added). A required structural component of a RICO enterprise is a "purpose of engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 946 (2009). The very essence of a RICO claim is that the participants worked together to purposefully engage in illegal conduct. Here, the alleged course of a conduct is the collection of illegal debts; but if Defendants did not know the debts were illegal, they could not have been acting with purpose to engage in illegal conduct. Plaintiffs here, have pled themselves outside the realm of plausibility.

To establish Debt Buyer Defendants knew, *or should have known*, of the alleged usurious nature of Plaintiffs' debts, the Amended Complaint further asserts Debt Buyer Defendants knowingly purchased tens of millions of dollars in AWL debt, of which they knew the individual interest rate charged to each loan, and before they purchased these debts, they knew that AWL loans, or ones similar, were being challenged as usurious. (Dkt. 24, ¶¶ 57-60). To complete the chain of knowledge, the Amended Complaint details: (1) "various enforcement actions against AWL and Curry"; (2) a Second Circuit opinion applying New York law; (3) enforcement actions in Pennsylvania and Montana against a different company; and (4) *Solomon*. (Dkt. 24, ¶ 61). Based on these "facts," Plaintiffs also impute knowledge of the usurious nature of the loans to the Down-Stream Collectors. (Dkt. 24, ¶ 71). But Plaintiffs cannot create a "purpose" here by detailing allegations regarding an entirely different set of entities. Nor can they rely on the unproven allegations lodged against the *Solomon* defendants to impute knowledge onto Defendants here. Moreover, the absence of any detail as to when Debt Buyer Defendants purchased the AWL debt, when they "contracted" with Down-Stream Collectors, or, in several instances, when collection efforts were made, creates a gaping hole in Plaintiffs' RICO theory.

In stark contrast to Plaintiffs' narrative about the *Solomon* defendants, the alleged facts regarding Defendants' relationship are brief. In addition to the above referenced "facts" about the Defendants' alleged intimate knowledge of the debts at issue here, Plaintiffs' RICO claims hinge on a select few additional allegations, all conclusory in nature: (1) Defendants and unnamed others worked together to purchase these illegal debts and collect on them; (2) Defendants and unnamed others agreed to establish the enterprise in order to collect significant profits; (3) Defendants created "an array of different companies involved to facilitate the illegal collection" in order to conceal identities and distribute profits; and (4) at all times, Defendants acted with knowledge of

the illegal nature of their "collection enterprise" and in furtherance of it. (Dkt. 24, ¶¶ 71-77). These few conclusory allegations simply do not describe the interconnectedness between the Defendants required to plausibly lead to the conclusion that Defendants engaged in an "enterprise" for the purpose of collecting illegal debt. Not surprisingly, the Amended Complaint leaves out the important details of who these "others" are that worked with Defendants, when Defendants created these companies in relation to when the debt was purchased, whose identity has been concealed, or how profits were distributed. The loose references to Defendants' supposed connection in furtherance of the scheme are conclusory puffery designed to bolster claims that lack factual support. The devil is in the details and the Amended Complaint is sorely lacking the necessary "facts" to make a connection among Defendants rising to the level of a RICO "enterprise."

Just as with *Solomon*, there is a striking difference between the factual allegations lodged against those implicated as "participants" in other similar cases and the Debt Buyer Defendants here. *See*, *Stinson*, *supra*; *Gibbs v. Haynes Investments, LLC*, 368 F. Supp. 3d 901 (E.D. Va. 2019), aff'd, 967 F.3d 332 (4th Cir. 2020); *Gibbs v. Plain Green, LLC*, 331 F. Supp. 3d 518 (E.D. Va. 2018). The asserted factual allegations at the heart of these prior cases showed significant involvement in both the creation and operation well beyond the threadbare connection Plaintiffs have made here between Debt Buyer Defendants and the "enterprise."

To compare, in *Stinson*, *supra*, this Court held that the plaintiffs had sufficiently pled a cause of action under § 1962(c) when it had been alleged that the defendants had "helped design and implement the Tribal lending business through their ownership and control of Think Finance, which developed the Tribal lending business model at the heart of this allegedly unlawful RICO enterprise." *Id*. at 312. Specifically, in *Stinson*, the complaint alleged that other named defendants attended meetings with Think Finance where they discussed, directed and approved decisions

relating to the "origination, marketing, underwriting, servicing, and collection of the loans." *Id*. at 313.

Similarly, in *Haynes, supra*, this Court scrutinized allegations made against the same tribal lenders and associates. In response to the *Haynes* defendants' Rule 12(b)(6) motion, the District Court found that plaintiffs easily met their burden given the allegations that defendants helped to "design and implement" the business and by directly funding the business, they controlled the size of the business. *Id*. at 933. The defendants also allegedly acted on behalf of the lenders in meeting with banks and other potential partners. *Id*.

Finally, in *Plain Green, supra*, the pleadings alleged the intimate working details of the relationships between the defendants as well as dates of written correspondence and meetings between the lenders and their associates in furtherance of the creation of the "enterprise." A power point presentation of one the meeting's agenda was even an exhibit to the pleading. *See Plain Green*, Case No. 3:17-cv-00495-MHL (E.D. Va. 2018) (Doc. 43) (First Amended Class Action Complaint).

Here, no reading of the facts alleged in the Amended Complaint could support a conclusion that an "enterprise" functioned with the purpose and relationships among the Defendants that the law requires. Plaintiffs simply allege that Debt Buyer Defendants bought debt and then contracted with Down Stream Collectors to engage in collection activity.[6]

Primarily, because Plaintiffs have not plead facts which plausibly demonstrate Debt Buyer Defendants knowingly purchased illegal debt, they cannot establish the essential "purpose" element of a RICO enterprise. Second, each allegation surrounding the relationships among

---

[6] Although not a moving Defendant, the only connection Spoor has to any of the conduct alleged is as a member of RTC and GT Managers – two entities that are not specifically tied to any of Plaintiffs' debt and is not alleged to have made any contact with Plaintiffs.

Defendants is a conclusory statement unsupported by the few specific facts that have been pled. *See Goodrow v. Friedman & MacFadyen, P.A.*, 2012 WL 6725617, at *11 (E.D. Va. 2012) ([m]ere conclusory language that Defendants and [alleged enterprise participants] operated as a RICO enterprise fails to satisfy the requirements of Rule 12(b)(6)"). Finally, because the Amended Complaint does not list any dates Defendants purportedly engaged each other in furtherance of this scheme, there are no facts to support the final element of a RICO enterprise – longevity. *See Nunes, supra* at *7 ("Plaintiff's allegations are insufficient because the Court is left to guess when, exactly, the enterprise took shape").

### b. The Amended Complaint does not sufficiently allege Defendants conducted the affairs of the enterprise rather than their own business affairs.

There is no factual allegation within the Amended Complaint which would possibly amount to furtherance of the affairs of the "enterprise," as opposed to the individual gain of Defendants. *See Cedric*, 533 U.S. at 163 (2001). It is plainly pled that Debt Buyer Defendants are in the business of purchasing debt – they "accomplish their debt-buying operation by purchasing multi-million-dollar portfolios" which included Plaintiffs' debt. (Dkt. 24, ¶ 44). After their purchase, Debt Buyer Defendants contracted with Down-Stream Collectors to collect the debt. (Dkt. 24, ¶ 65). At best, the Amended Complaint describes the usual course of business of debt purchasers and debt collectors, nothing more. Plaintiffs do not and cannot make any tenable connections between Defendants and the "enterprise" which amount to furtherance of the affairs of the "enterprise," as opposed to their own. *See Cedric*, *supra*. To adequately plead the existence of a RICO enterprise, "the activities of the alleged enterprise must be distinguishable from the normal day to day activities of [the] "persons" [involved]." *Myers v. Lee*, 2010 WL 3745632, at *5 (E.D. Va. Sept. 21, 2010). It follows then, that Plaintiffs' Amended Complaint fails to establish an enterprise for the purposes of RICO.

## 2. Plaintiffs cannot rely on ordinary business practices and unsettled civil litigation for the establishment of a claim of fraud.

Here, the very essence of Plaintiffs' claim is fraud, thereby subjecting the pleading to the heightened Rule 9(b) standard. Plaintiffs' RICO claims are predicated upon Defendants' collection of an "unlawful debt" through purchase of debt from a "rent-a-tribe" scheme allegedly designed to circumvent usury and licensing laws. (Dkt. 24, ¶¶ 47-56). Assuming, *arguendo*, that the Amended Complaint's cursory allegation of an "enterprise" is sufficient, the pleading remains devoid of any facts to suggest Defendants' conduct was anything other than normal business, and notably lacks the specificity required by Rule 9(b). *See Grant v. Shapiro & Burson, LLP*, 871 F. Supp. 2d 462, 474 (D. Md. 2012) ("bare, conclusory assertions fail to satisfy Rule 9(b)'s particularity requirement").

Compare the extensive conduct alleged in *Haynes* and *Plain Green*; it could not be more dissimilar to the allegations here, where Plaintiffs' attempt to establish RICO liability is tucked into seven paragraphs asserting conclusory statements without any reference to specific facts. (Dkt. 24, ¶¶ 72-78). The allegations are so vague and conclusory that a conspiracy to violate RICO is simply implausible and not sufficiently particularized. Generalized theories based on assumptions and speculation will not suffice. *See Yesko v. Fell*, 2014 WL 4406849, *9 (D. Md. 2014) ("[v]ague allegations of a RICO enterprise ... lacking any distinct existence and structure' will not survive dismissal" (*citing Mitchell Tracey v. First Am. Title Ins. Co.*, 935 F. Supp. 2d 826, 843 (D. Md. 2013)). Plaintiffs have failed to do so here, and any further amendment to the Amended Complaint would be futile because the "facts" simply do not exist. For the aforementioned reasons, Count Four of the Complaint must be dismissed.

### B. Plaintiffs have failed to establish a RICO Conspiracy under § 1962(d)

To make out a conspiracy claim under § 1962(d) (Count Five), the Amended Complaint must set out facts showing that Debt Buyer Defendants or any other member of the "enterprise" agreed to violate § 1962(c). RICO plaintiffs must allege a *direct relationship* between a defendant's supposedly injurious conduct and the alleged harm to state a claim under § 1964(c). 18 U.S.C. § 1964(c) (permitting civil action by "[a]ny person injured in his business or property *by reason of* a violation of section 1962 of this chapter….") (emphasis added); *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010). Knowledge is an essential element. "One must knowingly perform services of a kind which facilitate the activities of those who are operating the enterprise in an illegal manner." *Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961, 967 (7th Cir.2000). Furthermore, the Amended Complaint must "describe in detail the conspiracy, including the identity of the co-conspirators, the object of the conspiracy and the date and substance of the conspiratorial agreement." *Walters v. McMahen*, 795 F. Supp. 2d 350, 355 (D. Md. 2011), *aff'd*, 684 F.3d 435 (4th Cir. 2012) (*citing Cruz v. Cinram Intl. Inc.*, 574 F.Supp.2d 1227, 1236 (N.D.Ala.2008)).

Primarily, a § 1962(d) claim cannot survive without a successfully pled §1962(c) claim. *See GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 551 n.2 (4th Cir. 2001). For the reasons mentioned above, the absence of facts to show that Debt Buyer Defendants were members of, or in any way participated in, an "enterprise" to knowingly collect illegal debt is fatal to both its § 1962(c) and § 1962(d) claims.

Plaintiffs only offer conclusory allegations that Debt Buyer Defendants knew, *or should have known*, that the debt was uncollectable. From the face of the pleadings, there is no cognizable inference that Debt Buyer Defendants directly or indirectly participated in the creation of or furtherance of an "enterprise" for the purpose of violating § 1962(c) because there are no facts to

establish *scienter* with respect to the unlawfulness of the debt. The Amended Complaint lacks the necessary description of when, where, and how Debt Buyer Defendants came to know or should have known that the debt was unlawful because this issue has never been adjudicated. Nor do Plaintiffs provide any facts to establish how or when Debt Buyer Defendants agreed with Down-Stream Collectors, or the unnamed "others" to form or operate the alleged "enterprise" to violate § 1962(c). In a veiled attempt to plead with specificity, the Amended Complaint refers to "a series of agreements to conspire to violate § 1962(c), including…(1) the agreement to purchase the usurious AWL loans; and (2) agreements related to the collection of payments regarding the AWL loans. (Dkt. 24, ¶ 225). The Amended Complaint does not, however, identify the dates or actual substance of those agreements. These allegations are clearly insufficient to plead a plausible claim for a § 1962(d) conspiracy claim.  Accordingly, Count Five of the Amended Complaint must be dismissed.

III.    **The Amended Complaint Fails to Plead Facts Necessary to Establish their State Law Claims**

       **A.  Plaintiffs fail to sufficiently plead a claim for unjust enrichment.**

Count Six of Plaintiffs' Amended Complaint alleges an unjust enrichment claim against all Defendants, yet only ten of the sixteen Plaintiffs are alleged to have made payment, and all payments were made to Paramount and Structured Settlement. Given the lack of an agency relationship between any Down-Stream Collector and any Debt Buyer Defendant, and the failure of Plaintiffs to identify which Debt Buyer Defendant would have benefitted from said payment, this cause of action must be dismissed as against all Debt Buyer Defendants.

Unjust enrichment "rests upon the doctrine that a man shall not be allowed to enrich himself unjustly at the expense of another." *Rosetta Stone Ltd. v. Google, Inc*., 676 F.3d 144, 165 (4th Cir. 2012) (*quoting Kern v. Freed*, 299 S.E.2d 363, 365 (Va. 1983)). A plaintiff must prove that they

conferred a benefit on the defendant, that the defendant knew of the benefit and should have expected to pay (or repay) for the benefit, and that the defendant accepted the benefit while refusing to pay the plaintiff. *See id.* at 165–66 (applying Virginia law); *see also Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So. 3d 689, 693 (Fla. Dist. Ct. App. 2018); *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 230 Ariz. 314, 318 (Ct. App. 2012); *Nesby v. Country Mut. Ins. Co.*, 346 Ill. App. 3d 564, 566 (2004); *State, Dep't of Hum. Servs. ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 149 (Iowa 2001); *First Nationwide Sav. v. Perry*, 11 Cal. App. 4th 1657, 1664 (1992); *Walker v. Cotter Properties, Inc.*, 181 S.W.3d 895 (Tex. App. 2006); *Ludyjan v. Cont'l Cas. Co.*, 308 Wis.2d 398, 405 (2008); *Bel Fury Invs. Grp., L.L.C. v. Palisades Collection, L.L.C.*, 19 Neb. App. 883, 889 (2012).

Here, the Complaint lacks the facts to sufficiently make out any such claim. First, Plaintiffs do not offer factual content to establish that the provisions of the relevant contracts were unenforceable or illegal. Plaintiffs admit to receiving loans but do not provide the original loan amounts (except for Chourio),[7] date borrowed, whether it was an installment contract or required a lump sum payment, the interest rate charged, or that Debt Buyer Defendants were actually paid. In such an instance, the only portion of the loan that would amount to unjust enrichment would be that portion that is paid in excess of the principal loan amount – yet, except for Chourio whose claim fails for other reasons, the Amended Complaint lacks the necessary details to make out a claim. Accordingly, Count Six of the Complaint must be dismissed for failure to state a claim upon which relief may be granted.

### B. Plaintiffs fail to sufficiently plead a claim under state licensing and usury laws.

---

[7] Plaintiff Choriou, a Texas resident, identifies the original loan amount but fails to allege when she made payments or to whom she made payments. Further, in Texas, unjust enrichment claims are governed by a two-year statute of limitations period. *See Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869 (Tex. 2007).

Count Seven of the Complaint alleges that Defendants violated state licensing and usury laws. Addressing Plaintiffs' lack of licensing claim first, the Amended Complaint alleges that the states of Virginia, Arizona, Iowa, Wisconsin, Florida, California require an entity engaged "in the business of making personal loans to be licensed" and because none of the Defendants were licensed, the loans are null and void. (Dkt. 24, ¶¶ 247-249).  At the outset, because the Amended Complaint does not allege which statutory provisions require Defendants to be licensed, Plaintiffs' claims have not been pled with the requisite specificity to pass muster even under the liberal pleading standards of Rule 8(a). (Dkt. 24, ¶ 247). The only related statutory provisions referenced in Count Seven deal with disgorgement of profits, but these speak to damages and too removed to clarify which statutory sections Plaintiffs rely on to establish Defendants are required to be licensed. (Dkt. 24, ¶ 249). Without knowing which state licensing laws Plaintiffs assert were violated, and therefore how they govern Defendants' conduct, it is impossible to draw the inference that Defendants, alleged to have only engaged in debt collection activity, violated the law. "To contain sufficient factual matter to make a claim plausible, the factual content must 'allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*, 917 F.3d 206, 212 (4th Cir. 2019) *citing Iqbal*, 556 U.S. at 678.

Furthermore, relying solely on the allegation in the Amended Complaint that these "states require all who engage in the business of making personal loans to be licensed," Plaintiffs' claim must be dismissed in its entirety because none of the Defendants are alleged to have made personal loans to Plaintiffs. (Dkt. 24, ¶ 247). As for the Debt Buyer Defendants, the Amended Complaint alleges that "the single and principal business purpose of each Debt Buyer Defendant is the collection of debts." (Dkt. 24, ¶ 41). The Amended Complaint further alleges the Down-Stream

Collectors were retained to engage in collection activities with respect to Plaintiff's AWL debts. (Dkt. 24, ¶ 65). These conflicting allegations cannot be harmonized to save Plaintiffs' licensing claim from dismissal.

Lastly, assuming, *arguendo*, that debt collection activities fall within the scope of one of these unidentified state licensing laws, without any factual allegations describing the amount of the loan or type of loan, it is still not possible to determine if any applicable statute applies. For instance, Iowa's licensing requirement apply to loans of a certain threshold. *See* Iowa Code Ann. § 536.1. There is also a statute of limitations hurdle that Plaintiffs have failed to overcome due to the lack of specificity in the pleading. For instance, in Wisconsin, where Schlitz hails from, a claim for unjust enrichment on the grounds the lender is unlicensed must be brought within one year of the date of the last scheduled payment. Wis. Stat. Ann. § 138.14(15). Schlitz alleges to have made a payment to Paramount but neglects to allege when she did so. (Dkt. 24 ¶ 152). For the many reasons expressed here, Plaintiffs cannot maintain their licensing claims set forth in Count Seven against any of the Defendants.

Plaintiffs' usury claims fail under a similar theory. The Amended Complaint alleges, in general terms, that Defendants violated the usury laws of many states including Virginia, Arizona, Iowa, Nebraska, Texas, Wisconsin, Florida and California. As previously stated, the Amended Complaint does not specifically allege the interest applied to each of Plaintiffs' loans, nor the date the loans were made or the date, if any, the last payment was made. These details are necessary to at least demonstrate the interest rates exceeded the maximum amount permitted in each state, but of course this does not defeat the *Solomon* defendants' principal defense that tribal law, not state law, governs AWL loans. Further, Plaintiffs once again face a potential statute of limitations obstacle. Pursuant to Virginia law, the statute of limitations to bring a usury claim is two-years

from the date of the last payment. *See* Va. Code Ann. § 6.2-305. Mao is only resident of Virginia, but the Amended Complaint does not specify when, if ever, made a payment. (Dkt. 24 ¶¶ 81-83). Schlitz, as a resident of Wisconsin, must bring her usury claim within two-years from the date the interest is paid but she too failed to allege when her payment was made or if it was above the principal amount of the loan. *See* Wis. Stat § 893.62. These deficiencies in the pleading, taken individually or as a whole, require dismissal of Plaintiffs' usury claims.

### C. Plaintiffs fail to sufficiently plead a claim under the California Unfair Competition Law.

Count Nine of the Amended Complaint alleges all Defendants are in violation of California's unfair competition act ("UCL"), California Business and Professions Code §17200, based upon the predicate act of collecting payment on the AWL debt from Vazquez. (Dkt. ¶¶ 271, 277-278). "The UCL does not proscribe specific acts, but broadly prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising...." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1359, (2010); Bus. & Prof.Code, § 17200. "Therefore, an act or practice is 'unfair competition' under the UCL if it is forbidden by law or, even if not specifically prohibited by law, is deemed an unfair act or practice." *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1335 (2009). Because no other predicate acts have been alleged with respect to the collection of Vazquez's debt, liability pursuant to the UCL can only attach if the underlying AWL debt is found to be illegal. (Dkt. ¶¶ 163-166). For the reasons articulated above, the Amended Complaint fails to assert facts that plausibly demonstrate Vazquez's loan is illegal due to its interest rate. Furthermore, the Amended Complaint fails to allege which of the Defendant Debt Buyers owned the debt at the time of collection or who Paramount was collecting for when it took payment from Vasquez. Accordingly, Plaintiffs cannot maintain their UCL claim set forth in Count Nine against any of the Debt Buyer Defendants.

**D. Plaintiffs have failed to state a cause of action for fraud.**

In Plaintiffs' Tenth Count, they allege that Defendants committed fraud by making false statements and material misrepresentations which caused harm to Plaintiffs. To establish this claim, Plaintiffs must plead factual allegations sufficiently particular to show "(1) a false representation, (2) of material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) damages resulting from that reliance." *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 826 (4th Cir. 1999). Additionally, concealing a material fact that a defendant has a duty to disclose can amount to fraud by omission. *See Davis v. Wells Fargo Bank, N.A.*, 2014 WL 106257, at *6 (E.D. Va. 2014). The plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Plaintiffs' fraud claim cannot survive without specific allegations regarding the "circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559 (4th Cir. 2013). Plaintiffs' fraud claim fails for the simple reason that Plaintiffs do not provide any factual allegations of how or when Debt Buyer Defendants made misrepresentations to any Plaintiff regarding the legality of the debt because the debt has not been found to be illegal. Furthermore, Plaintiffs have not alleged that any Debt Buyer Defendant made contact with Plaintiffs Mao, Estrada, Staddon, May, Foley, Schlitz, Chappotin, Vazquez or Harris. Given that Plaintiffs have failed to allege facts to warrant a finding of vicarious liability, any representation made by a Down-Stream Collector cannot be imputed to a Debt Buyer Defendant. While GTM may have communicated with Plaintiffs Barclay, Croxford, Chourio and Moreno, the Amended Complaint does not allege that these Plaintiffs relied on any statements GTM may have

made. To the contrary, these Plaintiffs only made payments after they had been contacted by a Down-Stream Collector. (Dkt. 24, ¶ 289). The Amended Complaint is thoroughly bereft of any explanation of how or why any communication from GTM could be material to any harm that Plaintiffs allege. Accordingly, the Court should dismiss Plaintiffs' fraud claim as against Debt Buyer Defendants. There is not a single factual allegation of any kind to suggest that GT Managers, Reel Time or RTC participated in, or was even aware of, an alleged fraud.[8]

### E. This Court Should Decline to Exercise Supplemental Jurisdiction Over State Law Claims

This Court has original subject matter jurisdiction over Plaintiff's RICO and FDCPA claims, but in the event of dismissal of those claims, it has discretion to retain jurisdiction over the remaining state law claims for unjust enrichment, licensing, usury, the UCL and fraud, or dismiss them as well.[9] It is well settled that "[a] district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); see also, 28 U.S.C § 1367(c)(3). The Fourth Circuit has advised, "among the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995).

---

[8] Although not a moving Defendant, Spoor, who is implicated solely by his membership interest in GT Managers and RTC, is therefore even further removed from Plaintiffs' alleged injury.

[9] Plaintiff cannot rely on diversity of citizenship to maintain venue in the Eastern District of Virginia because no allegations have been made to show the damages resulting from the state law claims meet the $75,000 amount in controversy requirement. *See* 28 U.S.C. § 1332(a)(1). Second, because Mao is the only resident of Virginia and he makes no specific claims against Debt Buyer Defendants, this Court only has personal jurisdiction over them if the RICO claim survives.

Given that only one of sixteen Plaintiffs is a Virginia resident, there is no conceivable reason why this Court should elect to exercise jurisdiction over any remaining state law claims rooted in other jurisdictions. Furthermore, because a majority of the parties reside in other states, no party other than Mao is at a greater convenience in this District given their residency status and the location of witnesses and evidence. There are also no underlying federal policy issues raised by the state law claims and certainly "allowing a state court to address state law matters would best serve judicial economy." *Yin v. CTI Consultants, Inc.*, 2018 WL 1569486, at \*10 (E.D. Va. 2018). Accordingly, Debt Buyer Defendants respectfully request that this Court decline to exercise supplemental jurisdiction on any surviving state law claims asserted in the Amended Complaint.

## IV. Plaintiffs are Not Entitled to a Declaratory Judgment on the Validity of the Underlying Debt

Finally, Plaintiffs seek a declaratory judgment that the underlying AWL debt at issue here is void due to Defendants' failure to secure licenses in various states and because the applicable interest rates were in excess of the borrowers' state usury laws. (Dkt. 24, ¶¶ 263, 269). As discussed at length in Section III, B above, the Amended Complaint fails to particularize which state licensing statutes have been violated, and why they apply to Defendants, who did not lend to Plaintiffs. With respect to Plaintiffs' usury claim, the dearth of allegations surrounding the details of the loans cripples this cause of action. Moreover, Plaintiffs do not even allege that debt collection activities are governed by state usury laws because they, at least for purposes of this claim, allege Defendants are lenders. Nor can Plaintiffs simply site to allegations in *Solomon*, involving completely different parties, to establish the illegality of the underlying debt. For these reasons and those articulated above, Count Eight of the Amended Complaint must be dismissed.

## CONCLUSION

For the reasons set forth above, Global Trust Management, LLC and Reel Time Capital,

LLC respectfully request dismissal of all Counts in the Amended Complaint.

Dated: August 26, 2021

By:
*/s/ Dustin M. Paul*
Dustin M. Paul (VSB No. 75287)
VANDEVENTER BLACK
101 West Main St. Suite 500
Norfolk, Virginia, 23510
757-446-8600 (Telephone)
757-446-8670 (Fax)
dpaul@vanblacklaw.com

and

Richard M. Scherer, Jr., Esq.
(admitted pro hac vice)
Brendan H. Little, Esq.
(admitted pro hac vice)
LIPPES MATHIAS WEXLER FRIEDMAN LLP
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
716-853-5100 (Telephone)
716-853-5199 (Fax)
rscherer@lippes.com
blittle@lippes.com
*Counsel for Defendants Global Trust Managers,*
*LLC, Global Trust Management, LLC, RTC*
*Investors, LLC and Reel Time Capital, LLC*
4819-7236-3256, v. 1