IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

SOLINA MAO, *individually and on behalf*                )
*of all similarly situated individuals*,                )
      Plaintiffs,                                     )
                               )
            v.                                     )           Civil Action No. 4:21CV65 (RCY)
                               )
GLOBAL TRUST MANAGEMENT, LLC,        )
*et al.,*                                               )
      Defendants.                                     )
                               )

## MEMORANDUM OPINION

This matter is before the Court on the Motion to Dismiss (ECF No. 38) filed by Global Trust Management, LLC; Global Trust Managers, LLC; RTC Investors, LLC; and Reel Time Capital, LLC (the "Debt Buyer Defendants").[1]  The motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J).   For the reasons detailed herein, the Motion to Dismiss (ECF No. 38) will be denied in part and granted in part without prejudice, and Plaintiffs will be granted leave to file a Second Amended Complaint to address the deficiencies discussed herein.

## I. FACTUAL ALLEGATIONS

Plaintiffs and the putative class members are individuals that received loans from American Web Loan ("AWL"), defaulted on the AWL loans, and were subject to debt collection efforts. (Am. Compl. ¶¶ 1, 44, 64, ECF No. 24.)  AWL loans were internet payday loans, alleged to be part of a tribal-lending scheme. (*Id.* ¶ 2.)  In tribal lending schemes, a payday lender partners with a Native American tribe to use tribal immunity and tribal laws to skirt state usury laws. (*Id.*)

---

[1] Defendant Bradley Spoor filed a Notice joining the Debt Buyer Defendants' Motion to Dismiss and incorporating their Memorandum in Support by reference. (ECF No. 47.)

Plaintiffs each took out AWL loans that had triple-digit interest rates. (*Id.* ¶ 52.)  Some of these loans are alleged to have had interest rates as high as 700%. (*Id.*)

Defendants Global Trust Managers, LLC ("Global Trust Managers"); Global Trust Management, LCC ("Global Trust Management"); RTC Investors, LLC ("RTC Investors"); and Reel Time Capital, LLC ("Reel Time Capital") (collectively "Debt Buyer Defendants") are companies alleged to be involved in the debt collecting and debt purchasing business. (*Id.* ¶¶ 26-29, 41).  Defendant Bradley Spoor ("Defendant Spoor") owns Global Trust Managers and RTC Investors. (*Id.* ¶ 38.)  RTC Investors owns Reel Time Capital. (*Id.* ¶ 39.)  Global Trust Managers owns Global Trust Management. (*Id.*)  Defendant Spoor is a manager of Reel Time Capital and Global Trust Management. (*Id.* ¶ 40.)

The Debt Buyer Defendants purchased tens of millions of dollars in AWL loan debt. (*Id.* ¶ 57.)  Plaintiffs allege that the Debt Buyer Defendants knew that each loan was an AWL loan, knew the interest rates of the loans, and continued to charge interest on the loans. (*Id.* ¶¶ 58-60.)

After purchasing the loan debt, the Debt Buyer Defendants contracted with various debt collectors to collect these debts from consumers, including Paramount Asset Protection Services, LLC ("Paramount"); Direct Recovery Services, LLC ("Direct Recovery"); and Nationwide Capital Services, LLC, d/b/a Structured Settlement ("Structured Settlement") (collectively "Downstream Debt Collectors"). (*Id.* ¶¶ 32, 35-36, 65.)

Plaintiffs allege that the Debt Buyer Defendants contracted with the Downstream Debt Collectors so that the Downstream Debt Collectors could use aggressive and illegal debt collection techniques while the Debt Buyer Defendants would be insulated from liability. (*Id.* ¶¶ 66-69.) Further, Plaintiffs contend that the Debt Buyer Defendants and the Downstream Debt Collectors formed an association-in-fact enterprise for the purpose of collecting unlawful debts. (*Id.* ¶¶ 72-

75.)  Further, they allege that the use of multiple companies was to obscure the identities of the individuals involved. (*Id.* ¶ 75.)

The Defendants, both the Debt Buyer Defendants and the Downstream Debt Collectors, attempted to collect the debt from Plaintiffs by emailing, mailing, and calling Plaintiffs and their families. (*See id.* ¶¶ 82, 85, 86, 111, 120.)  Defendants falsely told Plaintiffs that the debt was legal and collectible and accused Plaintiffs of violating the law by not repaying the debt. (*Id.* ¶¶ 91-93, 104, 118.)  Defendants used aggressive tactics such as threatening forced collection, garnishment of wages, legal action, notifying employers, and placing liens on Plaintiffs' property. (*Id.* ¶¶ 89, 100, 110, 112, 116-117, 135, 138, 143, 156.)  In several instances, the debt collectors refused to provide documentation about the debt and refused to reveal their identity. (*Id.* ¶¶ 130, 141.)  In response to these tactics, several Plaintiffs made payments on their loans. (*Id.* ¶¶ 95, 101, 116, 132, 136, 144, 152, 162, 166, 170.)

## II. PROCEDURAL HISTORY

Plaintiffs filed a Complaint on May 27, 2021. (ECF No. 1.)  Plaintiffs filed a Motion for a Preliminary Injunction on June 15, 2021. (ECF No. 6.)  Defendants Global Trust Management and Reel Time Capital filed a Motion to Dismiss on July 8, 2021. (ECF No. 17.)  Plaintiffs withdrew their Motion for a Preliminary Injunction on July 13, 2021, and indicated that they would be filing an amended complaint soon after. (ECF No. 20.)

Plaintiffs filed an Amended Complaint on July 29, 2021. (ECF No. 24.)  The Debt Buyer Defendants filed a Motion to Dismiss and a Memorandum in Support on August 26, 2021. (ECF Nos. 38-39.)  Plaintiffs filed a Memorandum in Opposition on September 9, 2021. (ECF No. 41.) The Debt Buyer Defendants filed a Reply on September 22, 2021. (ECF No. 46.)

Defendant Spoor filed a Notice joining the Debt Buyer Defendants' Motion to Dismiss on September 24, 2021. (ECF No. 47.)  Plaintiffs filed an Opposition to Defendant Spoor's Notice on

October 8, 2021. (ECF No. 50.)  Defendant Spoor filed a Reply on October 13, 2021. (ECF No. 51.)

### III. LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). Dismissals under Rule 12(b)(6) are generally disfavored by the courts because of their res judicata effect. *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991).  Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* (citations omitted).  "[A] motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  The plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Id.* (citations omitted); *see also Martin*, 980 F.2d at 952.

# IV. DISCUSSION

## A. General Pleading Deficiencies

### 1. Group or Shotgun Pleading

#### a. Defendants' Position

Defendants argue that the Amended Complaint, as a whole, should be dismissed as a "shotgun pleading." (Mem. Supp. at 15, ECF No. 39.)[2]  Defendants contend that Plaintiffs impermissibly lump all the Defendants together and thus fail to state a claim for relief. (*Id*. at 14.) In grouping Defendants together, the Amended Complaint "makes it 'virtually impossible to ascertain what claims are asserted against which defendants and on what legal basis the respective claims are founded.'" (*Id.* at 15 (quoting *Turton v. Virginia Dep't of Educ.*, No. 3:14cv446, 2014 WL 12539403, at *2 (E.D. Va. Sept. 23, 2014).)  They contend that the failure of the Amended Complaint to differentiate between the Debt Buyer Defendants is a fatal error. (Reply at 8.)  By "group pleading," almost all of the Plaintiffs' claims are crippled, as liability is dependent on the ownership of the debt and having a contractual relationship with a Downstream Collector, and the Amended Complaint does not allege either of those relationships in regard to specific Debt Buyer Defendants. (*Id.* at 8-9.)  Taken together, Defendants argue that the Amended Complaint does not meet the standard imposed by Rule 8. (*Id*. at 9.)

#### b. Plaintiffs' Position

Plaintiffs do not directly address Defendants' Rule 8 argument.  Instead, they indirectly address it through their arguments for vicarious liability under the Fair Debt Collection Practices Act ("FDCPA" or "Act").  Plaintiffs argue that the Amended Complaint lays out the ownership structure of the Debt Buyer Defendants and contend that "[the Debt Buyer Defendants] use this

---

[2] The Court employs the pagination assigned to all documents referenced herein by the CM/ECF docketing system, except for transcripts which will be cited using the page and line numbers as contained in the original document.

convoluted corporate structure to conceal critical information from consumers, including who owns their debt and who is attempting to collect that debt from them." (Mem. Opp'n at 5-6, ECF No. 41.)  Plaintiffs fashion this argument as a vicarious liability argument under the FDCPA, an association-in-fact enterprise argument under RICO, and civil conspiracy liability for the unjust enrichment claim. (*Id.* at 6, 11, 27.)

### c. Discussion

Plaintiffs have alleged multiple theories of liability in an attempt to establish joint liability under a patchwork of statutes and common-law claims that each require their own articulation of similar concepts.  As such, the Court will discuss each of the relevant theories of joint liability in the appropriate claims.  Because Plaintiffs articulate a theory of group liability under each claim, the pleading is not a "group pleading" or "shotgun pleading."

### 2. Statute of Limitations

### a. Defendants' Position

Defendants argue that several counts should be dismissed because the Amended Complaint fails to establish that the claims were brought in a timely manner.  Defendants argue that the FDCPA claims are subject to a one-year statute of limitations period and that the omission of relevant dates is fatal to the claims. (Mem. Supp. at 21-22.)

### b. Plaintiffs' Position

Plaintiffs argue that statute of limitations is an affirmative defense and that the burden lies with the Defendants to establish that the claims are untimely. (Mem. Opp'n at 8.)  At the motion to dismiss stage, courts should only dismiss a claim if it is apparent from the face of the complaint that the claim is time barred. (*Id.*)

### c. Discussion

A motion to dismiss tests the legal adequacy of the complaint and only addresses the merits of affirmative defenses when the deficiencies giving rise to the affirmative defense appear on the face of the complaint. *Richmond, Fredericksburg & Petersburg R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993); *CSX Transp., Inc. v. Gilkison*, 406 Fed. App'x 723, 728 (4th Cir. 2010).  Courts should only dismiss complaints as time barred when it is clear "[e]ven under the most charitable interpretations of the dates asserted." *See Prescott v. PHH Mortg. Corp.*, No. 3:16cv288, 2017 WL 510449, at *3 (E.D. Va. Feb. 7, 2017).

Plaintiffs have alleged several violations that occurred within the FDCPA's one-year statute of limitations.  For example, the Amended Complaint alleges that that Plaintiff Mao was contacted on January 19, 2021, Plaintiff Harris was contacted on February 22, 2021, and that Plaintiff Barclay was contacted on April 19, 2021. (Compl. ¶¶ 82, 93, 172.)  Given that the original Complaint was filed on May 27, 2021, and the Amended Complaint was filed on July 29, 2021, these actions fall within the one-year statute of limitations period.

Therefore, the Court will not dismiss the Amended Complaint on the affirmative defense of statute of limitations.

### B. Fair Debt Collection Practices Act Counts

To establish a violation of the FDCPA, a plaintiff must show that: (1) the debtor is a consumer under the Act, (2) the defendant is a debt collector under the Act, and (3) the defendant has committed an act or omission violating the Act. *Robinson v. Moynihan*, No. 3:21cv122, 2021 WL 2346107, at *5 (E.D. Va. June 8, 2021) (citing *Withers v. Eveland*, 988 F. Supp. 942, 945 (E.D. Va. 1997)).  It does not appear that the parties dispute the first or second elements.

### 1. Count One: Violation of 15 U.S.C. § 1692e

The FDCPA prohibits debt collectors from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.  The section provides a non-exclusive list of examples of practices that would violate the section, including "the false representation of – the character, amount, or *legal status* of any debt." 15 U.S.C. § 1692e(2) (emphasis added).  Plaintiffs' theory of recovery is that "Defendants violated § 1692e by . . . indicating to Plaintiffs that they owed amounts that they did not owe, and deceptively labeling the debts as though they were legal, valid, and enforceable when they were not." (Am. Compl. § 184.)

### a. Defendants' Position

Defendants argue that the Amended Complaint fails to sufficiently allege that the debt at issue was invalid. (Mem. Supp. at 17.)  They contend that the debt has not been deemed illegal by any court. (*Id*.)  Further, Defendants contend that the Amended Complaint lacks sufficient facts to allege that the loans were in violation of state laws. (*Id*.)  Specifically, they note that the Amended Complaint does not specify the amount of loans, interest rates applied to the loans, and the date the loans were made. (*Id*.)

### b. Plaintiffs' Position

Plaintiffs argue that they sufficiently pled the illegality of the loans by alleging that the loans carried "triple-digit interest rates." (Mem. Opp'n at 4.)  Triple-digit interest rates violate every applicable usury law. (*Id*.)  Thus, by alleging that the interest rates were in the triple digits, Plaintiffs claim that they have sufficiently alleged the illegality of the loans and did not need to allege the exact rates of each loan. (*Id.* at 5.)

### c. Discussion

The central issue for Count One is whether Plaintiffs have alleged facts that make it plausible, not merely possible, that the debt was unlawful. Efforts to collect debt that is unenforceable under state law can serve as the basis for a claim under the FDCPA. *See Dunn v. Global Trust Mgmt., LLC*, 506 F. Supp. 3d 1214, 1240-41 (M.D. Fla. Dec. 10, 2020); *Chulsky v. Hudson Law Offices, P.C.*, 777 F. Supp. 2d 823, 833-34 (D.N.J. 2011). Thus, the issue becomes whether Plaintiffs have sufficiently pled that the debt was illegal under state law.

The Supreme Court has defined the contours of the plausibility pleading standard. "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). The complaint must state a claim that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Naturally, it is a "context-specific task" that involves a court using its "judicial experience and common sense." *See id.* at 679. The Court instructs lower courts "to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* The complaint must contain facts that push these legal conclusions of liability from possible to plausible. *Twombly*, 550 U.S. at 555. In making that determination, the court "must examine the complaint as a whole." *Miller v. Md. Dep't of Nat. Res.*, 813 Fed. App'x 869, 874 (4th Cir. 2020) (citing *Albright v. Oliver*, 510 U.S. 266, 268 (1994)).

The Amended Complaint alleges that "[t]he loans offered to each Plaintiff were illegal" and that "these loans charged a usurious interest rate." (Am. Compl. ¶¶ 53, 62.) These are legal conclusions that are not entitled to an assumption of truth. The Amended Complaint alleges some

facts.  For example, it alleges that the debt buyers purchased AWL loans, that every loan in the portfolios was an AWL loan, and that AWL loans charged triple-digit interest rates. (*Id.* ¶¶ 52, 57, 60.)  However, there is a gap between these facts and the inference that the loans were illegal and the debt was invalid.

Plaintiffs come close to bridging this gap.  They use three theories of illegality: (1) general usury statutes, (2) unlicensed small loans statutes, and (3) licensing statutes.  However, there are deficiencies in their pleading that prevent each of those three theories from being sufficient.  First, the putative class includes consumers from "any state other than Utah or Nevada." (*Id.* ¶ 177.) The Amended Complaint contains no fact allegations that the loans would be illegal in Delaware as no Delaware statutes are provided.  Second, without some knowledge of the loan amounts, it is unclear whether the loans violated the unlicensed small loan statutes or licensing statutes provided. For example, Plaintiff Foley is a resident of Nebraska. (Am. Compl. ¶ 18.)  Only one Nebraska statute is referenced in the Amended Complaint, and it is a violations provision that does not reference the maximum allowable interest rate. Neb. Rev. Stat. § 45-1038; (Am. Compl. ¶ 250.) Likewise, Plaintiff Estrada is an Arizona resident, and the Arizona statute provided does not contain sufficient information to infer that the loan made to Plaintiff Estrada was unlawful. (Am. Compl. ¶¶ 13, 250); *see* Ariz. Rev. Stat. Ann.§ 6-613.  The Amended Complaint refers to it as a general usury statute, but the provision does not provide a prohibited rate.

As currently pled, the Court cannot infer that the loans were unlawful under state law. Thus, the Court will dismiss Count One without prejudice.

### 2. Count Two: Violation of 15 U.S.C. § 1692f

The FDCPA prohibits debt collectors from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.  The statute provides a non-exhaustive list of practices that qualify as unfair or unconscionable. *Id.*

10

### a. Defendants' Position

Defendants argue that the Amended Complaint lacks sufficient allegations regarding the Debt Buyer Defendants' interactions with consumers. (Mem. Supp. at 18.)  Defendants argue that they cannot be held vicariously liable for communications between consumers and the Downstream Debt Collectors, as the Amended Complaint does not allege for which Debt Buyer Defendant each Downstream Debt Collector was collecting and does not sufficiently allege an agency relationship. (*Id.*)  Specifically, the Amended Complaint fails to allege that the purported principal exercised control over the purported agent. (*Id.* at 19.)

### b. Plaintiffs' Position

Plaintiffs argue that Defendants can be held vicariously liable for the actions of the Downstream Debt Collectors. (Mem. Opp'n at 5.)  Plaintiffs claim that Defendants' argument "ignores the allegations in the Amended Complaint about the ownership structure of these entities." (*Id.*)  The Amended Complaint alleges that RTC Investors is the sole owner of Reel Time, that Global Trust Managers is the sole owner of Global Trust, and that Defendant Spoor owns RTC Investors and Global Trust Managers. (*Id.* at 5-6.)  Further, Plaintiffs allege that the ownership structure is "part of the overarching scheme to collect the debt on behalf of Mr. Spoor." (*Id.* at 6.) Plaintiffs contend that contrary to Defendants' argument, Plaintiffs did particularize the nature of the relationship between the Debt Buyer Defendants and the Downstream Debt Collectors. (*Id.*)

### c. Discussion

The primary point of contention among the parties is whether a FDCPA claim can be based on vicarious liability.  The Fourth Circuit has not ruled on whether a claim under the FDCPA can be based on vicarious liability, but "more courts than not support the notion that an entity which itself meets the definition of debt collector may be held vicariously liable for unlawful collection activities carried out by another on its behalf." *See Long v. Pendrick Capital Partners II, LLC*, 374

F. Supp. 3d 515, 534 (D. Md. 2019) (quoting *McWilliams v Advanced Recovery Sys., Inc.*, 174 F. Supp. 3d 936, 942 (S.D. Miss. 2016) (internal quotation marks omitted) (alterations adopted).  The rationale is that a debt collector should not be able skirt the FDCPA by simply hiring another company to violate the law. *See id.* at 534-35 (citing *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 315 (7th Cir. 2016)).  In this approach, the entity itself must meet the definition of "debt collector" under the FDCPA to potentially be liable for the acts of the debt collectors it hired. *Id.* at 535.

While it may be possible to hold the Debt Buyer Defendants liable for the actions of the Downstream Debt Collectors,[3] this claim does not meet the plausibility standard under Rule 8. "Simply alleging causes of action against collective 'Defendants' without any factual allegations of wrongful conduct with respect to [an individual defendant] is insufficient to meet the pleading standard of Rule 8, as interpreted by *Iqbal* and *Twombly*." *Bryant v. Wells Fargo Bank, N.A.*, No. 5:10cv237, 2012 WL 642524, at *3 (E.D.N.C. Jan. 5, 2012).  In cases allowing vicarious liability for FDCPA claims, the complaints allege that a specific debt buyer contracted with a specific debt collector to collect a specific debt. *See, e.g., McAdory v. M.N.S. & Assocs., LLC*, 952 F.3d 1089, 1091 (9th Cir. 2020); *Jackson v. JTM Capital Mgmt.*, No. 19-1009, 2021 WL 1238565, at *8 (D. Md. Apr. 2, 2021); *Meola v. Asset Recovery Sols., LLC*, No. 17cv1017, 2018 WL 5020171, at *4 (E.D.N.Y Aug. 15, 2018).

The Amended Complaint alleges that "Mr. Spoor owns RTC Investors and Global Trust Managers." (Am. Compl. ¶ 38.)  It further alleges that "RTC Investors is the parent company and 100-percent owner of Reel Time Capital, and Global Trust Managers is the parent company and 100-percent owner of Global Trust Management." (Am. Compl. ¶ 39.)  The Amended Complaint

---

[3] The Court will not make a determination on whether vicarious liability applies to FDCPA claims, since it is not dispositive of this motion.

also alleges that the "Debt Buyer Defendants contracted with [the Downstream Debt Collectors.]" (*Id*. ¶ 65.)  Theoretically, vicarious liability could flow from Reel Time Capital to RTC Investors to Spoor, and it could flow from Global Trust Management to Global Trust Managers to Spoor. However, one way that it cannot flow is from Global Management to Reel Time Capital or vice versa.  Likewise, the Amended Complaint does not establish a relationship between any of the Downstream Debt Collectors that would allow vicarious liability to flow among them in any direction.  Further, it does not allege any specific relationships between a Debt Buyer Defendant and a Downstream Debt Collector.

There are several relationships that could possibly be inferred from the Amended Complaint.  Global Trust Management, Paramount, and Structured Settlements all tried to collect from Plaintiff Barclay. (*Id.* ¶¶ 85-88.)  Global Trust Management and Paramount both tried to collect from Plaintiff Rolon. (*Id.* ¶¶ 108, 111.)  Global Trust Management and Paramount both tried to collect from Plaintiff Croxford. (*Id.* ¶¶ 114-121.)  Thus, the Court could potentially infer that Global Trust Management contracted with Paramount and Structured Settlements regarding those debts.  However, two Debt Buyer Defendants, Reel Time Capital and RTC Investors, are not specifically alleged to have contracted with any of the Downstream Debt Collectors to collect the debt of any of the Plaintiffs and one Downstream Debt Collector, Direct Recovery Services, is not linked to any of the Debt Buyer Defendants.  Thus, for most of the Debt Buyer Defendants, there are insufficient allegations to hold them vicariously liable for the actions of the Downstream Debt Collectors.

While Plaintiffs have not termed it as such, the Amended Complaint's theory of recovery is more akin to common enterprise liability.  Under common enterprise liability "each entity within a set of interrelated companies may be held jointly and severally liable for the actions of other entities that are part of the group." *FTC v. Vantage Point Servs., LLC*, 266 F. Supp. 3d 648, 656

(W.D.N.Y. 2017). A common enterprise theory allows a court to consider "the pattern and framework of the whole enterprise" to determine if a "maze of interrelated companies" is a common enterprise. *See id.* (quoting *Delaware Watch Co. v. FTC*, 332 F.2d 745, 746 (2d Cir. 1964)). A common enterprise is not an alter ego or piercing the corporate veil inquiry, as "the entities within the enterprise may be separate and distinct corporations." *Id.* Several courts have allowed common enterprise theories of liability for claims under the FDCPA. *See, e.g., FTC v. Vantage Point Servs., LLC,* 266 F. Supp. 3d at 656-57; *FTC v. Fed. Check Processing, Inc.*, No. 14cv122, 2016 WL 5956073, at *8-10 (W.D.N.Y. Apr. 13, 2016); *Consumer Fin. Prot. Bureau v. Ocwen Fin. Corp.*, No. 17-80495, 2019 U.S. Dist. LEXIS, at *33 (S.D. Fla. Sept. 5, 2019) ("The Court also finds that the common enterprise liability theory has been applied to claims arising under TILA and the FDCPA."). Courts consider such factors as whether the entities "(1) maintain officers and employees in common, (2) operate under common control, (3) share offices, (4) commingle funds, and (5) share advertising and marketing." *Vantage Point Servs.*, 266 F. Supp. 3d at 656 (citing *FTC v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 469 (S.D.N.Y. 2014)). However, the Amended Complaint, as currently pled, does not allege facts sufficient to assess these factors.

The Amended Complaint does not plead sufficient facts to establish liability for several Defendants, whether under theories of direct liability, vicarious liability, or common enterprise liability. Once again, these deficiencies are easily curable. Thus, the Court will grant the motion to dismiss Count Two without prejudice.

### 3. Count Three: Violation of 15 U.S.C. § 1692c

The FDCPA prohibits debt collectors from communicating at certain times, at certain places, and with certain people about the consumer's debt. *See* 15 U.S.C. § 1692c. Without the prior consent of the consumer, a debt collector "may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting

agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." 15 U.S.C. § 1692c(b).

### a. Defendants' Position

Like Count Two, Defendants argue that they cannot be held vicariously liable for the actions of the Downstream Debt Collectors. (Mem. Supp. at 21.)  Further, Defendants argue that the only allegations that could support this cause of action are made against Paramount, and even those allegations fail the specificity requirement of § 1692c(b). (*Id.* at 20.)  The allegations do not include what was said to the family members in connection to the debt. (*Id.* at 21.)

### b. Plaintiffs' Position

Plaintiffs contend that the allegation that Defendants "discuss[ed] the details of the debt" with third parties is sufficient for the claims to survive a motion to dismiss. (Mem. Opp'n at 7.) They contend that an allegation of "direct communication" is sufficient under Rule 8. (*Id.*)

### c. Discussion

The parties disagree on the level of specificity needed to plausibly state a claim based on communication with a third party. Under 15 U.S.C. 1692c(b), "[e]xcept as provided in [§ 1692b], without prior consent of the consumer . . . a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency." 15 U.S.C. § 1692c(b).  The debt collector cannot inform a third party that the consumer owes any debt or use any language that indicates that the debt collector is in the business of debt collection. 15 U.S.C. § 1692b.

The FDCPA does not impose liability for messages that *might* reach a third party; a plaintiff must establish that the communication actually did reach a third party. *See Miller v. Medicredit, Inc.*, No. 3:18cv603, 2019 WL 6709388, at *8 (E.D. Va. Dec. 9, 2019); *Cozmyk v. Prompt Recovery Servs.*, 851 F. Supp. 2d 991, 994 (S.D.W. Va. 2012).  The Amended Complaint alleges

that a debt collector "told Plaintiff Rolon's family members that there was going to be a warrant for Plaintiff Rolon's arrest because of the AWL loan." (Am. Compl. ¶ 112.)  It also alleges that a debt collector "told Plaintiff Croxford's family members that they had filed two civil complaints against Plaintiff Croxford regarding the AWL loan." (*Id.* ¶ 121.)   Additionally, the Amended Complaint alleges that a debt collector "told Plaintiff Foley's family members that they would be filing legal action against Plaintiff Foley for the AWL loan." (*Id*. ¶ 138.)  In *West v. Costen*, the court found that calling debtors' families and threatening to prosecute the debts constituted a violation of the FDCPA. 558 F. Supp. 564, 576 (W.D. Va. 1983).  Given that Plaintiffs have alleged direct communication between the debt collectors and third parties, the Amended Complaint sufficiently alleges this claim.

However, this claim suffers the same defect as Count Two.  It relies on the Debt Buyer Defendants being vicariously liable for the actions of Downstream Debt Collectors, but the Amended Complaint does not allege facts sufficient to make that relationship plausible. So, the Court will dismiss Count Three without prejudice.

### C. Racketeer Influenced and Corrupt Organization Act Counts

#### 1. Count Four: Violation of 18 U.S.C. § 1962(c)

Under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C § 1962(c).

##### a. Defendants' Position

Defendants argue that Plaintiffs have failed to properly plead a RICO claim, as the Amended Complaint does not plead sufficient facts to show that Defendants conducted the affairs

16

of a RICO "enterprise." (Mem. Supp. at 23.)   Defendants contend that Plaintiffs have not adequately plead the three structural features of an "enterprise." (*Id.*)   They claim that the Defendants must have known that the debts were illegal in order to "purposely engage in illegal conduct." (*Id*. at 24.)   Further, they argue that Plaintiffs have not alleged any facts to support the longevity element. (*Id.* at 28.)  "Plaintiffs do not and cannot make any tenable connections between Defendants and the 'enterprise' which amounts to furtherance of the affairs of the 'enterprise,' as opposed to their own." (*Id.* at 28.)

### b. Plaintiffs' Position

Plaintiffs argue that there is no knowledge requirement under RICO; "it simply requires a person to engage in the conduct prohibited by the statute." (Mem. Opp'n at 9.)  Further, Plaintiffs argue that the Amended Complaint sufficiently alleges the structural elements – purpose, relationship, and longevity – necessary to establish an association in fact. (*Id.* at 11-14.) Additionally, Plaintiffs argue that collection of illegal debt is not a "normal business activity." (*Id.* at 18.)

### c. Discussion

To establish a claim under 18 U.S.C. § 1962(c), a plaintiff must allege that the defendant "(1) conducted the affairs of an enterprise (2) through the collection of unlawful debt (3) while employed by or associated with (4) the enterprise engaged in, or the activities of which affect, interstate or foreign commerce." *Gibbs v. Stinson*, 421 F. Supp. 3d 267, 312 (4th Cir. 2019).

The Defendants' main contention is that Plaintiffs have not plausibly alleged the existence of an enterprise.  An "enterprise" is an "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  Here, Plaintiffs allege that the Defendants' enterprise was an association-in-fact enterprise. (Compl. ¶ 72.)  An association-in-fact enterprise "is simply a continuing unit that

functions with a common purpose." *Boyle v. United States*, 556 U.S. 938, 948 (2009).   An association-in-fact enterprise must have three structural features: (1) purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose. *Id.* at 946.   The structural requirements are not extensive.   It does not need a hierarchy, fixed roles, or complexity. *Id*. at 948.   The Amended Complaint alleges that the enterprise's purpose was to collect unlawful debts. (Am. Compl. ¶ 72-74.)   The Amended Complaint also lays out the relationship among those associated with the enterprise, albeit less clearly than it lays out the purpose.   Defendant Spoor owns RTC Investors which owns Reel Time Capital, and Defendant Spoor owns Global Trust Managers which owns Global Trust Management. (*Id.* ¶¶ 38-39.)   Defendant Spoor is also a manger of Reel Time Capital and Global Trust Management. (*Id.* ¶ 40.)   These entities contracted with the Downstream Debt Collectors to actually collect the debts from customers. (*Id.* ¶ 65.)   Longevity is even less clearly alleged, but it is alleged.   The section of the Amended Complaint entitled "Defendants Attempt to Collect Usurious Debts from Plaintiffs" details actions of the "enterprise" to fulfill its "purpose" of collecting unlawful debts from at least February 18, 2020 to June 2, 2021. (*Id.* ¶¶ 79-175.)   Thus, longevity has been alleged.

Defendants make three primary arguments against the allegation of a RICO enterprise. First, they argue that the "purpose" element is not met as there are no allegations to support an inference that the Defendants knew the debt was illegal. (Mem. Supp. at 24.)   Second, Defendants argue that the Amended Complaint does not describe an enterprise that is distinct from the Defendants. (*Id*. at 28.)   Third, they argue that the alleged enterprise is based on allegations of fraud, so it must meet the specificity pleading standard of Rule 9(b). (*Id.* at 29.)

### i. Knowledge of Illegality

Defendants claim that "the very essence of a RICO claim is that the participants worked together to purposefully engage in illegal conduct." (Mem. Supp at 24.)  So, "if Defendants did not know the debts were illegal, they could not have been acting with purpose to engage in illegal conduct." (*Id.*)

To be an enterprise, the members must "associate together for a common purpose of engaging in a course of conduct." *Boyle*, 556 U.S. at 946 (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)).  In *United States v. Turkette*, the Supreme Court grappled with the issue of whether RICO covered both legitimate and illegitimate enterprises or was only limited to legitimate enterprises. 452 U.S. at 577.  The Court found that the definition of enterprise included both legitimate and illegitimate enterprises as nothing indicated "that an enterprise consisting of a group of individuals was not covered by RICO *if the purpose of the enterprise was exclusively criminal*." *Id*. at 581 (emphasis added).  It seems clear that if the Court was concerned about whether associating for a criminal purpose was included in the definition that a legitimate purpose would be sufficient.  The Court defines the requirement as being "associated together for a common purpose of engaging in a course of conduct." *Id.* at 583.  It does not say for the common purpose of engaging in a course of *illegal* conduct.

This can also be seen in the application of RICO in civil matters.  In *Crab House of Douglaston, Inc. v. Newsday, Inc.*, the court conducted an inquiry into whether the plaintiff had adequately alleged that the enterprise shared a common legal or a common illegal purpose. 418 F. Supp. 2d 193, 203 (E.D.N.Y. 2006).  The court found that there was no unlawful purpose, so "the question narrow[ed] to whether [the defendant] shared in the [enterprise's] lawful purpose." *Id.* at 204.  If purpose was confined to a course of illegal conduct, there would be no reason to pursue analysis of a lawful purpose.  In *R.J. Reynolds Tobacco Co. v. Mkt. Basket Food Stores, Inc.*, the

plaintiff alleged an association-in-fact enterprise that had the common purpose to promote the cigarette sales of its members. No. 5:05cv253, 2006 U.S. Dist. LEXIS 61927, at *15 (W.D.N.C. Aug. 21, 2006).  The court found that the plaintiff had adequately alleged an association-in-fact enterprise. *Id*. at *19.

Plaintiffs do not have to allege knowledge of illegality.  The purpose may be that Defendants associated for the purpose of collecting unlawful debt, whether they knew that debt was unlawful or not.

### ii. Distinctness

Defendants also take issue with whether the Amended Complaint sufficiently alleges that they conducted the affairs of the enterprise. (Mem. Supp. at 28.)  Section 1962(c) requires there to be two distinct entities: (1) a "person" and (2) an "enterprise." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001).  The enterprise cannot simply be the same person just referred to by a different name. *Id.*  Further, liability "depends on showing that the defendants conducted or participated in the conduct of the '*enterprise*'s affairs,' not just their *own* affairs." *Id*. at 163 (citing *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)).

Three cases within the Fourth Circuit are particularly helpful in explaining the distinctness requirement: *Myers v. Lee*, *Chambers v. King Buick GMC, LLC*, and *Solomon v. American Web Loan*.

In *Myers*, the plaintiff's central argument was that "he was systematically indoctrinated and defrauded over the course of a year, from September 2007 to August 2008, by the defendants acting through a network of affiliated entities formed and controlled by defendant Lee." No. 1:10cv131, 2010 WL 3745632, at *1 (E.D. Va. Sept. 21, 2010).  The plaintiff alleged that Lee formed, operated, and controlled Dahn World, which provided internet services. *Id.* at *2.  In turn Dahn World owned 74% of Dahn Yoga & Health Centers, which operated or affiliated with nearly

1,000 Dahn yoga centers. *Id.*[4]  The plaintiff alleged that the defendants formed an association-in-fact enterprise (the "Dahn Organization"). *Id.* at *3.  The plaintiff alleged that the components of the Dahn Organization "share[d] officers, directors, and [were] otherwise interrelated." *Id.* Further, the plaintiff alleged that the Dahn Organization was controlled by Lee and had a top-down command and control structure where Lee coordinated the enterprise's strategy. *Id.*  The plaintiff alleged that "the purpose of the Dahn Organization, operating through its members and other affiliated individuals, is to financially exploit the Dahn Organization's customers, members and employee's for the benefit of the Dahn Organization and its leader [defendant] Lee." *Id.*  The court determined that these facts were insufficient to allege "a RICO enterprise that operate[d] or function[ed] in a way distinct from the defendants themselves," as "[t]here [was] a complete overlap between the defendants, their alleged agents, and the enterprise." *Id.*  The court concluded that:

> The complete identity between the defendants, their agents, and the enterprise is particularly clear in this case since, as alleged, the purposes and personality of defendant Lee dominate both the defendants and the enterprise, neither of which has a purpose distinct from the goals and objectives of the other, from defendant Lee himself, or from his inherently fraudulent philosophy and activities.

*Id.*  The court found that the plaintiff failed to allege a RICO enterprise that was distinct from the defendants. *Id.* at *6.

The alleged scheme in *Chambers* was that a RICO enterprise sought to violate Maryland law by selling vehicles without disclosing that those vehicles had previously been short-term rental vehicles. *See* 43 F. Supp. 3d 575, 583 (D. Md. 2014).  The plaintiffs alleged a RICO enterprise (the "King Auto Group") existed and was comprised of separately incorporated car dealerships that jointly marketed vehicles, sold vehicles, and developed form documents to be used in their

---

[4] Lee also owned several other defendant entities that are irrelevant to the discussion in this opinion. 2010 WL 3745632, at *2.

sales. *Id.* at 584.  The defendants argued that the allegations "failed to differentiate between the 'person' and 'the enterprise,' and thus [could not] show distinctiveness." *Id.* at 589.  The court found this argument "unavailing." *Id.* at 590.  The court noted that each defendant was "a separately incorporated entity, ha[d] its own business location and employees, and that through 'contractual arrangement and joint management activity, formed an association-in-fact with each other.'" *Id.*  Further, each dealership also engaged in legitimate sales. *Id.*  The court also described the different roles in the scheme played by the various dealerships. *Id.* at 590-91 (describing that different dealerships advertised the cars, sold the cars, and furnished CarFax Reports).  The court found it relevant that each defendant was an independent car dealership as opposed to subsidiaries of a single car dealership. *Id.* at 591.

In *Solomon*, the purported enterprise was a "rent-a-tribe" scheme used to issue the AWL payday loans that are at issue in this case. No. 4:17cv145, 2019 WL 1320790, at *3 (E.D. Va. Mar. 22, 2019).  The scheme centered around defendant Curry and the MacFarlane Group. *Id.*  Curry owned the MacFarlane group until it was "acquired" by a tribal group. *Id.*  Several entities owned by Curry and the Medley defendants provided funding for the payday loans offered by AWL. *Id.* at *3-4.  The Court resolved the distinctness issue by finding that the alleged enterprise was more like the one in *Chambers* than the one in *Myers*.  The plaintiffs had alleged that "each of the defendants, as distinct entities, associated with each other and nonparties for the common purpose of exploiting the sovereignty of the Tribe to engage in the practice of issuing usurious loans." *Id.* at *7.  The Court pointed to four specific allegations that supported the overall allegation that the identity of the enterprise was separate from the persons taking part in the enterprise. *Id.* at *8.  First, American Web Loan Inc. served as the nominal lender. *Id.* at *7.  Second, Curry was in de facto control of the scheme's leading operations. *Id.*  Third, the Medley defendants provided financial backing to grow the scheme and were involved in the coordination and execution of the

scheme. *Id.*  Fourth, the tribal entity served to shield the scheme from federal and state law. *Id.* at *8.

There are sufficient allegations to support an inference that the members of the alleged association-in-fact are distinct from the enterprise itself.  The Amended Complaint alleges that the Debt Buyer Defendants were all interrelated through various ownership schemes. (Am. Compl. ¶¶ 38-40.)  There are no allegations of any common ownership interests between the Debt Buyer Defendants and the Downstream Debt Collectors.  In fact, one of the Downstream Debt Collectors, Paramount, is alleged to be completely owned by a separate Defendant. (*Id.* ¶ 33.)  Thus, like in *Chambers*, there are at least some separate entities involved. Further, the Amended Complaint alleges that the Debt Buyer Defendants own multi-million-dollar portfolios of debt, which include the AWL. (*Id.* ¶ 44.)  This allegation implies that they own debt outside of the AWL debt.  While this is a very close call, at the motion to dismiss stage where all facts and inferences are to be viewed in the light most favorable to the plaintiffs, the Amended Complaint has sufficiently alleged distinctness.

### iii. Rule 9(b) Pleading Standards

Defendants claim that "the very essence of Plaintiffs' claim is fraud, thereby subjecting the pleading to the heightened Rule 9(b) standard." (Mem. Supp. at 29.)  As such, they contend that Plaintiffs' generalized theories are based on assumptions and do not satisfy the particularity standard. (*Id.*)  Meanwhile, Plaintiffs claim that collection of unlawful debt is not a fraud-based RICO claim, so Rule 9(b) is inapplicable. (Mem. Opp'n at 20-21.)

The non-fraud elements of a RICO claim are assessed using Rule 8, not Rule 9(b). *See WW, LLC v. Coffee Beanery, Ltd.*, No. 05-3360, 2012 WL 3728184, at *13 (D. Md. Aug. 27, 2012) ("[I]t is generally accepted, that any non-fraud elements of a RICO claim may be pled pursuant to the less-stringent notice pleading standard of Rule 8."); *Proctor v. Metropolitan Money Store*

*Corp.*, 645 F. Supp. 2d 464, 476 (D. Md. 2009) ("[Defendants] are simply mistaken that Rule 9(b)'s requirement of particularity applies to the other elements of the RICO claims (e.g. existence of a conspiracy) *in addition* to the predicate acts of mail and/or wire fraud.")

RICO defines "unlawful debt" in terms of gambling and usury, not fraud. *See* 18 U.S.C. § 1961(6). At least one court has found that RICO claims based on unlawful debt are assessed under the standards of Rule 8, not Rule 9(b). *See Fleetwood Servs., LLC v. Ram Capital Funding, LLC*, No. 20cv5120, 2021 WL 1987320, at *3 (S.D.N.Y. May 18, 2021). It is worth noting that in *Neild v. Wolpoff & Abramson, LLP*, the Court found that Rule 9(b) is not applicable to claims arising under the FDCPA. 453 F. Supp. 2d 918, 923 (E.D. Va. 2006). While violations of the FDCPA are not predicate offenses for RICO, the reasoning of the Court's decision is instructive here.[5] The Court found that unlawful debt collection activities were substantially different than common law fraud. *Id.* at 923-24. It stands to reason that the collection of unlawful debt under RICO would also be substantially different than common law fraud.

### iv. Sufficiency of the Claim

Based on the discussion above, the Court concludes that Plaintiffs have adequately alleged the existence of a RICO enterprise. Therefore, the Motion to Dismiss will be denied as to Count Four.

### 2. Count Five: Violation of 18 U.S.C. § 1962(d)

RICO also makes it illegal to conspire to violate any of the subsections of § 1962, including §1962(c). "RICO conspiracy is not a mere conspiracy to commit the underlying predicate acts. It is a conspiracy to *violate RICO* – that is, to conduct or participate in the activities of a corrupt

---

[5] In *Neild*, the Court noted that acting in violation of FDCPA is not a predicate act and found that the plaintiffs had not alleged that any of the debt was based on gambling activity or usury. 453 F. Supp. 2d at 926. Thus, the Court only analyzed the sufficiency of the pleading regarding the pattern of racketeering activity. *Id.*

enterprise." *Zavala v. Wal-Mart Stores, Inc.*, 691 F.3d 527, 539 (3d Cir. 2012) (citing *Salinas v. United States*, 552 U.S. 52, 62 (1997)).

### a. Defendants' Position

Defendants' primary argument is that a § 1962(d) claim cannot survive without a sufficiently pled § 1962(c) claim. (Mem. Supp. at 30.)  They contend that the facts allege do not establish scienter with respect to the unlawfulness of the debt. (*Id.* at 31.)

### b. Plaintiffs' Position

Plaintiffs argue that they have adequately alleged their § 1962(c) claim. (Mem. Opp'n at 23.)  Further, they contend that the Amended Complaint sufficiently alleges that the Defendants knew of and facilitated a conspiracy to collect unlawful debt. (*Id.*)

### c. Discussion

"[T]o prove a RICO conspiracy, two things must be established: '(1) that two or more people agreed to commit a substantive RICO offense and (2) that the defendant knew of and agreed to the overall objective of the RICO offense.'" *Solomon*, 2019 WL 1320790, at *11 (quoting *United States v. Posada-Rios*, 158 F.3d 832, 857 (5th Cir. 1998)).  There must be an agreement to commit the overall objective, although the agreement may be established by circumstantial evidence. *Id.*  Defendants must have "'objectively manifested an agreement to participate directly or indirectly in the affairs of the enterprise' through the collection of an unlawful debt and 'had knowledge of the essential nature of the plan' of the conspiracy." *Id*. at *12 (quoting *United States v. Tillett*, 763 F.2d 628, 632 (4th Cir. 1985)).

The Amended Complaint does not sufficiently allege an agreement to participate in the enterprise or that the participants had knowledge of the plan of the conspiracy.  The allegations related to the agreement are conclusory rather than factual.  The Amended Complaint alleges that "the Debt Buyer Defendants contracted with other "down-stream" debt collectors . . . in order to

coerce consumers into paying money on these loans that they do not owe," that they contracted with the Downstream Debt Collectors "so that these loans could be collected using aggressive collection tactics," and that "[e]ach of the Defendants and others agreed to establish the illegal collection enterprise in order to collect significant profits from the usurious AWL loans." (Am. Compl. ¶¶ 6, 65-66, 74.) Further, it alleges that "Defendants knew of and agreed to the overall objective of the illegal collection enterprise and conspiracy to collect unlawful debt." (*Id.* ¶ 78.) These are not allegations of facts; these are conclusory statements. Pleading on information and belief alone is not enough to raise allegations beyond a speculative level. *See Walters v. McMahen*, 795 F. Supp. 2d 350, 355 (D. Md. 2011).

A plaintiff must put forward some details about the substance of the agreement. In *Walters v. McMahen*, the court found allegations that supervisors told human resources staff to violate immigration laws to be insufficient, as the complaint did not allege facts about "when or where the agreement took place, or the specific substance of any communications between management and HR staff." *Id*. at 355-56. In *Solomon*, the Court found one set of defendants (the "Medley Defendants") liable for RICO conspiracy while dismissing the claim against another defendant ("GOLDPoint"). The Medley Defendants engaged in weekly calls, on-site visits, attended board meetings, and had frequent interaction with another member of the conspiracy. *Solomon*, 2019 WL 1320790, at *7. Further, there were written agreements pertaining to the scheme. *Id*. Conversely, GOLDPoint agreed to provide software support to one of the conspirators, but no facts were alleged that they knowingly pursued or intended to further the unlawful objective of the scheme. *Id.* at *12. Other unlawful debt collection or payday loan RICO conspiracies have alleged facts like revenue sharing agreements, merger agreements, or data sharing agreements with some level of detail about those agreements. *See Hengle v. Asner*, 433 F. Supp. 3d 825, 898 E.D. Va. 2020); *Gibbs v. Elevate Credit, Inc.*, No. 3:20cv632, 2021 WL 4851066, at *19 (E.D. Va. Oct. 17, 2021).

26

Simply stating that various parties "agreed" to participate in the conspiracy is not sufficient under Rule 8.  There must be some factual allegations to support the assertion that an agreement took place and the nature of that agreement.

Therefore, the Court will dismiss Count Five without prejudice.

**D. State Law Counts**

### 1. Count Six: Unjust Enrichment

#### a. Defendants' Position

Defendants argue that since Plaintiffs have not established agency relationships and have not identified which Debt Buyer Defendants have benefited, the claim should be dismissed. (Mem. Supp. at 31.)  Defendants contend that the allegations only support that payments were made to Paramount and Structured Settlement and claim that is insufficient to render the Debt Buyer Defendants liable. (*Id.*)

#### b. Plaintiffs' Position

Plaintiffs allege that the loans were unlawful because of the triple-digit interest rates, that the information that Defendants claim is lacking is immaterial, and that Defendants have benefited from the payments on the unlawful debt. (Mem. Opp'n at 26.)  They argue that all the Defendants can be liable under a conspiracy liability theory.

#### c. Discussion

Unjust enrichment has the following elements: (1) plaintiff conferred a benefit on the defendant, (2) the defendant knew of the benefit and should have expected to repay the plaintiff, and (3) the defendant accepted or retained the benefit without paying for its value. *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 166-67 (4th Cir. 2012).  In *Hengle v. Asner*, a payday loan case, the Court applied conspiracy liability to an unjust enrichment claim. 433 F. Supp. 3d 825, 894 (E.D. Va. 2020).  Civil conspiracy spreads liability to persons other than the primary tortfeasor.

*Gelber v. Glock*, 800 S.E.2d 800, 821 (Va. 2017).  As has been previously discussed, Plaintiffs have alleged an overarching scheme to collect unlaw debt for the benefit of all parties to the scheme, so the Court will allow this claim to proceed at this juncture.

Therefore, the Motion to Dismiss will be denied as to Count Six.

### 2. Count Seven: Violations of Licensing and Usury Laws

#### a. Defendants' Position

Defendants argue that the Amended Complaint does not provide the statutory provisions that they are accused of violating and so, Plaintiffs have not plead this claim with enough specificity to satisfy Rule 8. (Mem. Supp. at 33.)  Further, Defendants claim that they have not made personal loans, so they cannot be found to have provided personal loans without a license. (*Id.*)  Additionally, the Amended Complaint does not allege the amount of the loans, so it impossible to tell whether the laws referenced, some of which state thresholds for loan amounts, have been triggered. (*Id.* at 34.)

#### b. Plaintiffs' Position

Plaintiffs argue that their references to certain state laws satisfy Rule 8, as those statutes are references to statutory schemes. (Mem. Opp'n at 28.)  Further, they contend that the licensing schemes also prohibit collecting on personal loans that violate state statutes and that Defendants can be held liable as assignees to the loans. (*Id.* at 29.)

#### c. Discussion

The Court agrees with the Defendants that Plaintiffs have not plead this claim with enough specificity.  Without providing the statute that they believe the Defendants have violated, these allegations amount to a "the-defendant-unlawfully-harmed-me accusation" that does not satisfy Rule 8. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, this deficiency can be easily cured.

Thus, the Court will dismiss Count Seven without prejudice.

### 3. Count Eight: Declaratory Judgment

#### a. Defendants' Position

Defendants put forward the same arguments they used against Count Seven.  They argue that the Amended Complaint does not provide enough details about the loans and does not provide the applicable statutes to create an inference that they have violated state usury and licensing laws. (Mem. Supp. at 38.)

#### b. Plaintiffs' Position

Plaintiffs argue that the Court should entertain their request for a declaratory judgment, as there is an actual controversy over the rights and obligations of these loans. (Mem. Opp'n at 30.) Without a declaratory judgment, Plaintiffs will be subject to the ongoing collection of unlawful loans. (*Id.*)

#### c. Discussion

Given that the Court will be granting leave to amend the Amended Complaint, the Court will not address this claim at this time.  Plaintiffs will be able to provide the applicable statutes that the Defendants seek.  In the interests of judicial economy, the Court will not render a decision on this claim.

### 4. Count Nine: Violations of Unfair Competition Law

#### a. Defendants' Position

Defendants argue that this claim must be dismissed, since the Amended Complaint does not sufficiently allege that the loans were unlawful and does not allege which Debt Buyer Defendants owned the debt subject to this California statute. (Mem. Supp. at 35.)

### b. Plaintiffs' Position

Plaintiffs contend that they have alleged sufficient facts to establish, at this stage, that the debt is unlawful. (Mem. Opp'n at 31.).  Further, they contend that the Unfair Competition Law ("UCL") encompasses unfair practices that are not explicitly prohibited by other statutes and that the Defendants' actions are subject to the UCL. (*Id.*)

### c. Discussion

California's Unfair Competition Law is "a broad remedial statute that permits an individual to challenge wrongful business conduct 'in whatever context such activity might occur.'" *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007) (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tele. Co.*, 973 P.2d 527, 540 (Cal. 1999)).  It defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." Cal. Bus. & Prof. Code § 17200.  Thus, it is violated when a defendant's act is either (1) unlawful, (2) unfair, (3) fraudulent, or (4) a false or misleading advertisement. *Lozano*, 504 F.3d at 731.  Each is a distinct theory of liability. *Id.*

The Amended Complaint does allege a plausible claim for the violation of California's usury law.  The Amended Complaint alleges that Defendants have violated California Financial Code § 22303 which renders the loans void under § 22750.  Under California law, there are four brackets based on loan amounts and each has a corresponding maximum interest rate. *See* Cal. Fin. Code § 22303.  None of these brackets allow for a triple-digit interest rate. *Id*.  Given that the Amended Complaint alleges that the loans had triple-digit interest rates, there is a plausible inference that the California loans were unlawful. (Am. Compl. ¶¶ 52, 55, 249-50, 263-64.)

Even if Plaintiffs had not properly alleged that the California loans were unlawful, they could still proceed under a theory that the debt collection on loans that carried triple-digit interest rates were unfair.  *See Brice v. Haynes Investments, LLC*, 548 F. Supp. 3d 882, 898 (N.D. Cal.

2021) (noting that the plaintiffs had preserved their right to argue that the defendants' conduct was unfair even if there argument based on the illegality of usury failed); *see Zhang v. Superior Court*, 304 P.3d 163, 167 (Cal. 2013) ("[A] practice may violate the UCL even if it is not prohibited by another statute. Unfair and fraudulent practices are alternate grounds for relief.").

Thus, the Motion to Dismiss will be denied as to Count Nine.

### 5. Count Ten: Fraud

Plaintiffs state that they "hereby withdraw[] the fraud claims and ask the Court to dismiss them without prejudice." The Court will do so. As such, no further discussion of this claim is necessary.

### V. LEAVE TO AMEND

Rule 15 of Federal Rules of Civil Procedure "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The rule instructs that leave should be given "when justice so requires." *Id.* The Supreme Court has noted that leave should be "freely given" unless there has been "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Id.*

None of the concerns from *Foman v. Davis* are present here. Further, Plaintiffs have explicitly requested leave to amend if the Court found that the Amended Complaint was deficient. (Mem. Opp'n at 31.) As has been noted throughout this opinion, the deficiencies in the Amended Complaint can likely be cured, and Plaintiffs will be given an opportunity to do so.

**VI. CONCLUSION**

For the reasons detailed herein, the Motion to Dismiss (ECF No. 38) will be denied in part and granted in part without prejudice, and Plaintiffs will be granted leave to file a Second Amended Complaint to address the deficiencies discussed herein.

An appropriate Order shall issue.

_____ /s/ _____
Roderick C. Young
United States District Judge

Norfolk, Virginia
Date: <u>March 31, 2022</u>